# LOUISVILLE AND NASHVILLE RAILROAD COMPANY *v.* SCHMIDT.

ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 178. Argued March.12, 13, 1900. — Decided April 9, 1900.

The due process clause of the Fourteenth Amendment to the Constitution of the United States does not control mere forms of procedure in state courts, or regulate practice therein; and all its requirements are complied with provided that in the proceedings which are claimed not to have been due process of law, the person condemned has had sufficient notice, and adequate opportunity has been afforded him to defend.

The mere fact that in this case the proceeding to hold the Louisville and Nashville Company liable was by rule does not conflict with due process under the Fourteenth Amendment, since forms of procedure in state courts are not controlled by that amendment, provided the fundamental rights secured by the amendment are not denied.

Although the Louisville and Nashville Company appeared in response to the rule, pleaded its set-off, and declared that its answer constituted a full response, no defence personal to itself of any other character except the set-off was pleaded or suggested in any form, and this court cannot be called upon to conjecture that defences existed which were not made, and to decide that proceedings in a state court have denied due process of law because defences were denied when they were not prosecuted.

THE three corporations directly or indirectly involved in this controversy are the Northern Division of the Cumberland and Ohio Railroad Company, the Louisville, Cincinnati and Lexington Railway Company and the Louisville and Nashville Railroad Company. In order to abbreviate we shall refer to them respectively as the Cumberland and Ohio, the Cincinnati and Lexington and the Louisville and Nashville.

On July 2, 1879, the Cumberland and Ohio mortgaged its road to secure its certain negotiable bonds.

On July 28, 1879, the Cumberland and Ohio leased its road for thirty years to the Cincinnati and Lexington. The lease provided that if the earnings of the Cumberland and Ohio proved inadequate to pay the interest on the bonds, secured by the mortgage above referred to, the lessee, the Cincinnati and Lex-

ington, would "supply the deficiency so far as it may be done by appropriating the net earnings, or so much as may be needed, on its own lines, which may accrue by reason of business coming to it from or over said first party's line." The lease provided that the lessee, the Cincinnati and Lexington, should not assign the contract without the consent of the lessor, the Cumberland and Ohio. Contemporaneously with the execution of the lease and in order to secure the carrying out of the stipulation providing for the application of certain stated earnings of the Cincinnati and Lexington to the payment of the interest on the bonds of the Cumberland and Ohio, the former corporation executed a mortgage in favor of the bondholders of the Cumberland and Ohio, hypothecating the net earnings on the Cincinnati and Lexington arising from business coming from the leased line. Although the Cumberland and Ohio did not abandon its corporate life and preserved its formal existence, all its railroad and appurtenances as a result of the lease passed from its own to the control of the Cincinnati and Lexington.

In November, 1881, the Cincinnati and Lexington conveyed all its property to the Louisville and Nashville, and made to the latter an assignment of the lease of the property of the Cumberland and Ohio. Despite the fact that the assignment of the lease was not approved by the original lessor, the Cumberland and Ohio, as provided in the lease, the Louisville and Nashville took control of both the roads of the Cincinnati and Lexington and Cumberland and Ohio, and operated the same, reaping all the revenues of every kind arising therefrom. In 1885, default having supervened in the payment of the interest on the bonds of the Cumberland and Ohio, issued and secured as above stated, the trustee under the mortgage commenced proceedings against the Cincinnati and Lexington to enforce the mortgage on net earnings derived from business of the Cumberland and Ohio. It is not denied that at the time the action was commenced the fact of the transfer of the property of the Cincinnati and Lexington and the assignment of the lease of the Cumberland and Ohio to the Louisville and Nashville was known to the trustee. However, the Cincinnati and Lexington was the only party made defendant. The relief

sought was a discovery of the amount of net earnings, derived from business coming from the Cumberland and Ohio, and a decree for the amount, when ascertained, for the benefit of the mortgage bondholders. A most protracted and hotly contested lawsuit ensued. The question of earnings coming to the Cincinnati and Lexington from business over the Cumberland and Ohio was thoroughly explored by reports, expert examination of books, testimony, etc., resulting in what is denominated by counsel for the plaintiff in error in their brief as a "wilderness of figures." At last a final decree was entered fixing the earnings which under the contract were attributable to the mortgage creditors of the Cumberland and Ohio, at the sum of $53,565.62, which the defendant was ordered to pay into court with interest by a day stated. The sum not having been paid a rule was taken on the defendant to compel performance, and in response it was answered:

"That in 1881 it sold and conveyed, for a consideration paid at the time, all its property, rights, privileges and franchises except the mere franchise to exist, and that it distributed the proceeds of such sale among its various stockholders, and since said time it has had no property, assets or funds of any kind with which to comply with the order of this court, and it is therefore unable to pay said sum, or any other sum, for the simple reason that it has no property or assets with which to do it."

The sale referred to in this answer being that which had been made by the Cincinnati and Lexington of all its property, including the assignment of the lease held by it from the Cumberland and Ohio to the Louisville and Nashville. In reply to a rule taken on the defendant to report the amount of net earnings which had accrued subsequent to the period embraced by the decree for $53,565.62, the defendant said:

"States and shows to this court that it has not made any net earnings, or earnings of any kind, since the date aforesaid, on business coming to it from or over the Cumberland and Ohio road, nor has it made earnings of any kind, since it does not own any railroad or property of any character whatever, and has not since the date aforesaid."

Thereupon the plaintiff sought leave by an amended and supplemental petition to make the Louisville and Nashville a party defendant to the cause. Among others the following averments were contained in the petition :

" Plaintiffs state that prior thereto the said Louisville and Nashville Railroad Company had purchased and acquired and at the time of said conveyance held the capital stock of the said Louisville, Cincinnati and Lexington Railway Company, and as such stockholder took and appropriated and has ever since enjoyed the whole purchase price of the Louisville, Cincinnati and Lexington Railway Company and all its said properties.

" Plaintiffs state that after the execution of said deed of November 1, 1881, said Louisville and Nashville Railroad Company took possession of all the property of the Louisville, Cincinnati and Lexington Railway Company aforesaid and of the property leased, as aforesaid, to said company, including the Northern Division of the Cumberland and Ohio Railroad Company aforesaid, and began to operate and has ever since operated said railroads and properties and taken and appropriated to its own use the earnings thereof.

" Plaintiffs state that at all times since November 1, 1881, said Louisville and Nashville Railroad Company, subject to and in accordance with the provisions of said lease and mortgage and by virtue thereof, has operated the said Northern Division of the Cumberland and Ohio Railroad and the said Louisville, Cincinnati and Lexington Railway and properties, and has made all the earnings mentioned and proved in the reports of the several commissioners in this case, and ascertained and adjudged in the several judgments of this court, and finally adjudged in the opinion and judgment of the Court of Appeals herein, all of which said earnings were spoken of by witnesses and by the courts aforesaid in said reports and judgments respectively as the earnings of the Louisville, Cincinnati and Lexington Railway Company.

" Plaintiffs further state that the Louisville and Nashville Railroad Company at the time of its aforesaid purchase of the railroad and properties of the Louisville, Cincinnati and Lexington Railroad Company actually knew all the provisions of the

lease, mortgages and contracts set up in the original petition in
this suit, and actually applied net earnings accruing from said
operation of said properties therein referred to, in accordance
with said lease, mortgages and contracts, from the time of its
said purchase until the 1st day of April, 1883, and knew at all
times, including the time during which this action has been pend-
ing, that it had operated said railroad and all the other prop-
erty of said Louisville, Cincinnati and Lexington Railway Com-
pany, and of the Northern Division of the Cumberland and Ohio
Railroad Company, and that it had received all the earnings
which were made by said properties, and understood and recog-
nized that the earnings mentioned in the petition referred to
the earnings made in the operation of the railroad and proper-
ties of the Louisville, Cincinnati and Lexington Railway Com-
pany and the Northern Division of the Cumberland and Ohio
Railroad Company, and filed the answer in this case in the name
of the Louisville, Cincinnati and Lexington Railway Campany,
and filed all other papers which were filed herein on behalf of
the defence, and itself employed counsel in this case to make
defence in the name of the Louisville, Cincinnati and Lexington
Railway Company, and introduced all the witnesses who were
introduced on behalf of the defence of this action, and has been
in court defending this action and has controlled the defence
thereof continuously from the time the summons on the orig-
inal petition was served in this case on Milton H. Smith, who
was its president, on the — day of ——, 1885, and from the
time the said Louisville and Nashville Railroad Company caused
the answer to said petition to be filed herein on the — day of
——, 1886."

The leave to file was denied on the ground that it was too
late to do so after judgment. This order, refusing to allow the
amendment, was affirmed by the Court of Appeals of the State
of Kentucky. That court, however, in its opinion intimated
that the amendment was not necessary if the averments of the
supplemental and amended petition were true, and that under
the facts the Louisville and Nashville might be proceeded against
by rule to show cause. 99 Kentucky, 143. Following the path
thus pointed out by the Court of Appeals, a rule in the lower

court was applied for to compel the Louisville and Nashville to pay the amount of the judgment. The court considered the suggestion which had been made, in the opinion of the Court of Appeals, as not binding on it, and hence declined to allow the rule on the ground that the Louisville and Nashville not having been named as a defendant in the proceeding could not be by rule condemned to pay the judgment. The Court of Appeals reversed the order of the trial court and directed the rule to issue as prayed for. The court in effect held that as the affidavit by which the rule was supported in substance charged that the Louisville and Nashville prior to and during the entire suit had operated the roads from which the revenues accrued which were in controversy, and that that corporation had in substance volunteered in the cause to defend the same in the name of the technical defendant; had carried on the defence through its own counsel, had paid all the expenses of the litigation; the officers of the corporation which was technically a defendant being the officers of the Louisville and Nashville, therefore, the Louisville and Nashville had had under the laws of Kentucky due notice of the suit, and ample opportunity to defend, in fact had actually carried on the defence, and could hence be condemned by rule to pay the judgment. The trial court thereupon entertained and issued the rule, which was served on the Louisville and Nashville. That corporation for answer to the rule said, among other things:

First. "That it is not a party to this suit. It has not been named in any pleading in the case as a party, and there is no averment made in any pleading in the case against this respondent, or that is applicable to this respondent, and no judgment or order has ever been entered in this case against this respondent, and no process has ever issued against or ever been served on this respondent."

Second. "There has never been a time from the institution of this suit up to this time when this respondent could, with propriety, have filed an answer setting up its defences against the alleged claim of the plaintiff, and to require it now to pay into court upon this rule the amount stated in the rule, or any other amount, would be to deprive this respondent of its prop-

erty without due process of law, contrary to the Constitution of the United States in such cases made and provided."

The answer then pleaded a set-off to the amount of $16,524.37, which it was claimed the Louisville and Nashville should be allowed if it was held bound to pay the judgment. The conclusion of the answer was as follows: "Wherefore having fully responded, this respondent prays that the rule herein be discharged." The court, having expressed in a careful opinion its view that the Louisville and Nashville could not be condemned, by rule, because it had not been a technical party to the record, nevertheless, considering itself bound by the action of the Court of Appeals, made the rule absolute, and entered a decree against the Louisville and Nashville Railroad, condemning it to pay the judgment, subject to the set-off which had been pleaded in the answer to the rule, and this judgment was affirmed by the Court of Appeals of the State of Kentucky as a delay case. By an allowance of a writ of error the cause is now here for review.

*Mr. Helm Bruce* and *Mr. James P. Helm* for plaintiff in error. *Mr. H. W. Bruce* was on their brief.

*Mr. John G. Simrall* and *Mr. Edmund F. Trabue* for defendant in error. *Mr. Temple Bodley*, *Mr. John C. Doolan*, *Mr. Benjamin F. Washer* and *Mr. James S. Pirtle* were on their brief.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

It is no longer open to contention that the due process clause of the Fourteenth Amendment to the Constitution of the United States does not control mere forms of procedure in state courts or regulate practice therein. All its requirements are complied with, provided in the proceedings which are claimed not to have been due process of law the person condemned has had sufficient notice and adequate opportunity has been afforded him to defend. *Iowa Central Railway* v. *Iowa*, 160 U. S. 389; *Wilson* v. *North Carolina*, 169 U. S. 586.

The claim of the plaintiff in error (the Louisville and Nash-ville) is that the decree rendered against it did not constitute due process of law, first, because it had no notice of the suit, it not having been summoned as a party defendant; and, second, that as it was not made a nominal party defendant and served with process as such, it had no adequate opportunity to make defence. In support of the second contention various provisions of the Kentucky law have been referred to in the argument, from which it is deduced that the Louisville and Nashville would have been without right in the proceeding brought, not against it, but against the Cincinnati and Lexington, to make defences which may have appertained and been relevant to the Louisville and Nashville, and might not have related to the Cincinnati and Lexington, the party defendant on the record. But the answer to these contentions is that the necessary effect of the opinion and decree of the court of last resort of Kentucky, is to hold, first, as a matter of fact, that, although not a technical defend-ant, the Louisville and Nashville became voluntarily, in the name of the Cincinnati and Lexington, the real, although not the nominal, defendant in the cause, and during the long years of this protracted litigation was in legal effect an actor in the courts of Kentucky seeking, by every possible means, to defeat the claim of the plaintiff. The conclusions of fact found by the court of last resort of Kentucky are not subject to reëxamination by this court. Clearly, also, the inevitable result of the conclu-sion of the Court of Appeals of Kentucky is that it was the duty of the Louisville and Nashville, having come in voluntarily in the cause to defend its interest, under the name of the technical defendant, if it had defences which were personal to itself, to have made such an appearance on its own behalf as to enable it to make them, and that the statutes of Kentucky not only au-thorized this course, but obliged the Louisville and Nashville to have followed it. Accepting as we do the interpretation placed by the courts of last resort of Kentucky on the law of that State, the contention of the plaintiff in error is at once demon-strated to be without merit. Besides the conclusiveness of what we have just said, there is another view which is equally deci-sive. The record shows no offer of any defence whatever, by

the Louisville and Nashville, which was refused by the courts below. On the contrary, every defence made is shown to have been entertained, fully considered and to have been ultimately decided. The argument then reduces itself to this: That one who has voluntarily appeared in a cause and actively conducted the defence is to be held to have been denied, by the courts of the State, the right to make a defence which was never presented. Moreover, even if we put out of view altogether all the proceedings had in the original cause during the many years when the suit was pending, and confine our attention solely to the events which took place after the application for the rule to show cause, on the Louisville and Nashville, the same conclusion is rendered necessary. It is undoubted that the Louisville and Nashville was made a party defendant to the rule in the most technical sense, and was actually served. It made answer and asserted its set-off. The mere fact that the proceeding to hold it liable was by rule does not conflict with due process under the Fourteenth Amendment, for, as we have seen, forms of procedure in the state courts are not controlled by the Fourteenth Amendment, provided the fundamental rights secured by the amendment are not denied. But it is argued whilst it is true the effort by rule to enforce responsibility for the judgment did not violate the Fourteenth Amendment, and service of the rule was adequate notice, yet no opportunity to defend was afforded, because all right to defend had been cut off by the previous judgment. In effect it is asserted the rule summoned the corporation to show cause why it should not pay a judgment to which, under the previous decree, there was no right on its part to make any defence whatever. In other words, it is said the right to proceed by rule was upheld by the Kentucky court because the Louisville and Nashville was bound by the judgment and therefore the rule rested on an assumption which precluded the setting up of any defence to it. But the answer to this argument is plain. Although the Louisville and Nashville appeared in response to the rule, pleaded its set-off, and declared that its answer constituted a full response, no defence personal to itself of any other character, except the set-off, was pleaded or suggested in any form whatever. The argument, therefore,

asks us to say that the Louisville and Nashville in the proceeding in which it was duly served, and to which it responded and as to which it had its day in court, was deprived of defences which it never asserted, and that due process of law was not administered to it because it was unheard in respect to matters concerning which it made no claim. But this court cannot be called upon to conjecture that defences existed which were not made and to decide that proceedings in a state court have denied due process of law because defences were denied, when they were not presented. And especially must that be so where the court of last resort of the State, on review of all the proceedings, has held that full opportunity to make every defence was afforded. True it is that in *Rees* v. *City of Watertown,* 19 Wall. 107, 123, it was said: "Whether in fact the individual has a defence . . . is not important. To assume that he has none, and therefore that he is not entitled to a day in court, is to assume against him the very point he may wish to contest." But this truism was stated with reference to a case where it was argued that a condemnation without notice could be justified on the assumption that if notice had been given no defence could have been made. Manifestly, the principle can have no application to a case where there was notice, and the presumption which we are asked to invoke is that although no defences were pressed they may have possibly existed.

*Affirmed.*