# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-00114-SCT

*EDWIN C. MAUCK AND KENNETH L.*
*SMOTHERMAN*

*v.*

*COLUMBUS HOTEL COMPANY, A DELAWARE*
*CORPORATION, FIRST FEDERAL BANK FOR*
*SAVINGS, AND THE CITY OF COLUMBUS,*
*MISSISSIPPI*

### CONSOLIDATED WITH
#### 90-CA-00846-SCT

*COLUMBUS HOTEL COMPANY, A DELAWARE*
*CORPORATION*

*v.*

*ELMER PIERCE, JR., CHARLES N. WHITE,*
*d/b/a EL ARK, INC., AN ARKANSAS*
*CORPORATION, KENNETH L. SMOTHERMAN,*
*AND EDWIN C. MAUCK, FIRST FEDERAL*
*BANK FOR SAVINGS, AND THE CITY OF*
*COLUMBUS, MISSISSIPPI*

### ON MOTION FOR CLARIFICATION[1]

| | |
|---|---|
| DATE OF JUDGMENT: | 09/30/96 |
| TRIAL JUDGE: | HON. DOROTHY WINSTON COLOM |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | JAMES RAY MOZINGO |
| | CRAIG D. SMITH |
| | J. TYSON GRAHAM |
| ATTORNEYS FOR APPELLEES: | J. RANDOLPH LIPSCOMB |
| | JEFFREY J. TURNAGE |
| | DAVID L. SANDERS |
| | R. GAWYN MITCHELL |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED AND REMANDED - 8/26/1999 |
| MOTION FOR REHEARING FILED: | 12/23/98 |
| MANDATE ISSUED: | 09/02/1999 |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. The motions for rehearing on behalf of First Federal Bank and the City of Columbus are granted. The motion for rehearing filed on behalf of Columbus Hotel Company is denied. The opinions and order granting attorney fees on appeal previously issued by this Court are withdrawn and this opinion is substituted therefor.

¶2. We treat an appeal from a decision awarding attorney's fees and the question of whether the intervening defendants, each having a security interest in the case, should share liability for fees imposed upon the lessee. We conclude that there is no legal basis for imposing attorney's fees on the interveners and that there is no manifest error as to the amount to fees awarded. Accordingly, we affirm the judgment of the chancellor.

**I.**

¶3. This appeal arises from a decision of the Chancery Court of Lowndes County, Mississippi that followed the reversal and remand by this Court of the case *Columbus Hotel Co. v. Pierce*, 629 So. 2d 605 (Miss. 1993). There we canceled a long-term lease that Columbus Hotel Company (hereafter CHC) sought to have forfeited and remanded the case to the lower court in order to determine the proper amount of the attorney's fees and expert fees to be awarded to CHC. *Id.* at 611. Following remand,

defendant interveners First Federal Bank For Savings (hereafter First Federal) and the City of Columbus (hereafter City) filed motions to dismiss, or in the alternative for summary judgment as to their liability for attorney's fees. Both First Federal and the City argued that they were not parties to the lease agreement, and consequently are not liable to CHC for fees or expenses incurred in the litigation. Chancellor Woodrow W. Brand, Jr. denied both motions by order entered September 26, 1994.

¶4. The chancery court, upon its own motion, granted certification pursuant to Miss.R.App.P. 5(a). With permission from the lower court, First Federal and the City filed a Petition for Interlocutory Appeal with this Court seeking clarification of the issues to be decided by the chancery court on remand. Both petitions were denied by this Court.

¶5. After the denial of the interlocutory appeal, another Chancellor, Dorothy W. Colom, assumed the case. CHC filed a motion and supporting brief for award of attorney fees and expenses. In both the City and First Federal's response to CHC's motion for award of attorney fees and expenses, each party once again argued that it was not responsible for CHC's attorney fees and expenses.

¶6. After the case was finally submitted for decision on the merits, Chancellor Colom entered her Opinion Awarding Attorney's Fees, which awarded CHC all fees and costs requested on an hourly basis, with a reduction of ten percent for attorney Lipscomb's failure to maintain contemporaneous time records for a total award of $97,696.25. The Chancellor rejected CHC's request for enhancement of the fee award but the opinion further awarded $22,072.26 for expenses relating to the litigation of the action. In addition, the Chancellor found that First Federal and the City were not liable, concluding that "[n]either First Federal nor the City of Columbus qualify as lessees, assignees or sublessess [sic]." A Final Judgment in favor of CHC was entered against El-Ark, Inc., Smotherman and Mauck on September 30, 1996.

## II.

¶7. This matter originated from a Complaint to Cancel Lease filed on May 13, 1988, by CHC seeking to cancel a lease agreement dated July 19, 1979, between CHC as lessor and El-Ark, Inc. as lessee. The lease concerned property upon which was situated a hotel and the former Continental Trailways Bus Station, now a city parking lot. Randolph Lipscomb, the attorney for CHC, was retained on March 23, 1988 when a contingent fee agreement with CHC was executed. The original defendants were El-Ark, Smotherman and Mauck. Subsequently, alleging a special financial interest in upholding the lease, First Federal was allowed to intervene on December 19, 1988, and the City of Columbus was allowed to intervene on March 24, 1989. First Federal and the City asserted affirmative defenses which were personal to the parties to the lease

agreement such as waiver, estoppel, laches and compliance with the lease, and First Federal vigorously defended the claims asserted by CHC, including major participation in the discovery phase as well as at trial. First Federal also retained an accounting firm to perform an audit of the hotel business in an effort to comply with the lease agreement.

¶8. A three-day trial on the merits was held with Chancellor William E. Bearden, Jr. presiding. In the written opinion the court held that the defendants had in fact breached the lease agreement but did not grant a forfeiture of the lease on grounds of unconscionability. Thereafter, the chancery court entered its final decree denying CHC all damages, all attorney fees and all expert witness fees.

¶9. On the first appeal, we reversed the decision of the chancellor and rendered a judgment of forfeiture of the lease agreement. *Columbus Hotel Co. v. Pierce*, 629 So. 2d 605 (Miss. 1993). We remanded the case to the Chancery Court of Lowndes County "for a determination of the proper amount of attorney's fees and expert costs." *Columbus Hotel Co.*, 629 So. 2d at 610.

¶10. On remand CHC hired attorney William H. Liston to aid Lipscomb in preparing a motion for attorney fees. Lipscomb filed a motion for attorney fees which was accompanied by affidavits by himself and Liston and several other supporting exhibits. The chancery court granted CHC its requested expenses and also accepted that Lipscomb expended 654.25 hours and Liston expended 57.25 hours in litigation of this action at the rate of one hundred fifty (150) dollars per hour finding that this rate is within the range of fees customarily charged. The amount awarded is disputed by both parties. Following the denial of the petitions to reconsider filed by Mauck and CHC, Mauck and Smotherman brought this appeal in which CHC cross appealed and filed notice of appeal against First Federal and the City. Several issues and sub issues are presented for this Court's consideration.

### III.

¶11. The first issue asserted by Mauck, Smotherman, and by CHC, concerns the liability of First Federal and the City for attorney's fees.

### A. Standing

¶12. The City of Columbus and First Federal assert that Mauck and Smotherman lack standing to challenge their dismissal on appeal. In support of this contention they cite Miss. Code Ann. § 11-3-37 (1991), which reads as follows:

## § 11-3-37. Appellant not entitled to reversal for error as to another.

> In all cases, civil and criminal, a judgment or decree appealed from may be affirmed as to some of the appellants and be reversed as to others; and one of several appellants shall not be entitled to a judgment of reversal because of an error in the judgment or decree against another, *not affecting his rights in the case.* And when a judgment or decree shall be affirmed as to some of the appellants and be reversed as to others, the case shall thereafter be proceeded with, so far as necessary, as if the separate suits had been begun and prosecuted; and execution of the judgment of affirmance may be had accordingly. Costs may be adjudged in such cases as the supreme court shall deem proper.

Miss. Code Ann. § 11-3-37 (1991) (emphasis supplied). The City argues that no matter what the outcome of this appeal, Mauck and Smotherman will not be relieved of their obligation to pay attorneys' fees and expenses, and consequently their rights remain unaffected by the chancellor's decision to dismiss the City. The City cites *Capital Transport Co. v. McDuff*, 319 So. 2d 658 (Miss. 1975), in support of its argument that Mauck and Smotherman do not have standing to appeal. In *Capital Transport Co.*, the jury returned a verdict against the master but failed to return a verdict against the servant when the master's liability depended upon the negligence of the servant. In finding that the master did not have standing to raise the issue and reversal was not required, we stated that, "[o]f what avail should it be to appellant that its co-defendant (servant) was so fortunate as to be let out or even given a windfall? The appellee (plaintiff) is the only one who has posture to raise such a complaint and he has not cross-appealed." *Capital Transp. Co.*, 319 So. 2d at 661. *See also Meena v. Wilburn*, 603 So. 2d 866, 872-73 (Miss. 1992) (reiterating the holding of *Capital Transport* that just because the jury returned a verdict against one defendant and not the other in a negligence action does not require reversal of the verdict); *D.W. Boutwell Butane Co. v. Smith*, 244 So. 2d 11, 12 (Miss. 1971) (holding "where the employee is exonerated and the master held liable, the case will not be reversed for that reason alone").

¶13. We agree. That does not mean the issue of First Federal and the City's responsibility to pay the attorney fees of CHC is barred from review, however, because CHC assigned this as an issue in its cross-appeal. CHC adopted the arguments of Mauck and Smotherman as their arguments pertain to the responsibility of First Federal and the City to pay for CHC's attorney's fee award.

### B. Judicial Estoppel

¶14. Both First Federal and the City advance the argument that CHC is estopped from

seeking expert and attorney's fees from them. They argue that CHC's complaint only named El-Ark, Smotherman and Mauck as defendants and only on remand did CHC seek attorney fees from First Federal and the City. They further argue that CHC consistently opposed their intervention in the case because CHC did not have any relationship with First Federal or the City and it maintained that position through the appeal of cause # 90-CA-0846. Both First Federal and the City cite to ***Banes v. Thompson***, 352 So. 2d 812, 816 (Miss. 1977), for the rule that a party cannot assume one position at one stage of a proceeding and then assert a contrary position later in the same action based on judicial estoppel.

¶15. With regard to the doctrine of judicial estoppel, we have previously stated that the doctrine "is based on expedition of litigation between the same parties by requiring orderliness and regularity in pleadings." ***Thomas v. Bailey***, 375 So. 2d 1049, 1052 (Miss.1979) (*citing **Great Southern Box Co. v. Barrett***, 231 Miss. 101, 94 So. 2d 912 (1957)). "[J]udicial estoppel will be applied in civil cases where there is multiple litigation between the same parties and one party knowingly 'assert(s) a position inconsistent with the position in the prior' litigation." ***Hoover v. State***, 552 So. 2d 834, 838 (Miss.1989) (finding that judicial estoppel does not apply in criminal cases when the parties are not identical); ***State ex rel. Holmes v. Griffin***, 667 So. 2d 1319, 1324 (Miss.1995); ***Merchants Nat'l Bank v. Stewart***, 608 So. 2d 1120, 1127 (Miss. 1992). However, we have explained that where the first position asserted was taken as a result of mistake, judicial estoppel should not be invoked. ***Thomas***, 375 So. 2d at 1053. In addition in ***Thomas*** we stated:

> It has been held that when the party making the prior statement, which is inconsistent with his position in the present action, has not benefitted by the assertion, the doctrine should not be applied.

***Id.*** (*citing **McFry v. Stewart***, 219 Ala. 216, 121 So. 517 (1929)). ***Thomas*** held that judicial estoppel was inapplicable to that case because the inconsistent statement was a result of a mistake, the one making the statement did not benefit and his opponent was not injured by the assertion, and the parties were not adverse in the earlier proceeding. ***Id.***

¶16. The rationale of ***Thomas*** is applicable to the case *sub judice*. CHC admits that it did argue that there was no relationship between First Federal and the City but it asserts that First Federal opposed this contention successfully at every turn and it was that success which allowed First Federal to step into the shoes of the Lessees and assert personal defenses of the lessees. At the time of the prior litigation up until 1992, when First Federal foreclosed on the leasehold deed of trust, it had no contractual obligation to CHC and CHC's prior statement was not inconsistent with its contention now that First Federal is an assignee of Mauck and therefore is bound under the terms

of the original lease agreement.

¶17. Based on the foregoing analysis, CHC's contention that under the doctrine of judicial estoppel First Federal and the City are estopped from denying liability lacks merit as well. First Federal at no time asserted that it is an assignee and thereby obligated to pay expert or attorney fees to CHC. Although neither the City nor First Federal attempted to distinguish itself from the other defendants by claiming it was not bound by the lease provisions and argued that the lessees did not breach the lease, it never admitted that it was anything other than a creditor due to its leasehold deed of trust. While one can understand Mauck's argument, as incorporated in the brief of CHC, that First Federal and the City were allowed by the trial court to assert defenses that were personal to the other defendants such as compliance with the lease, estoppel, waiver and laches and thereby stepped into the shoes of the lessees, this argument sounds in equitable estoppel and not judicial estoppel.

## C. Equitable Estoppel

¶18. "The doctrine of equitable estoppel is based upon fundamental notions of justice and fair dealing." *O'Neill v. O'Neill*, 551 So. 2d 228, 232 (Miss. 1989). We have identified two elements that must be satisfied in order to work an estoppel: "(1) that he [a party] has changed his position in reliance upon the conduct of another; and (2) that he has suffered detriment caused by his change of position in reliance upon such conduct." *Id.* at 232 (*citing* **PMZ Oil Co. v. Lucroy**, 449 So. 2d 201, 206 (Miss. 1984)). However, in order to command that the doctrine be applied "'[h]e who comes into equity must come with clean hands.'" *Id.* at 233 (*quoting* V.A. Griffith, *Mississippi Chancery Practice*, § 42 (2d ed. 1950)).

¶19. CHC does not show that the required elements of equitable estoppel are satisfied. The only case cited in support of an estoppel argument is *Louisville & Nashville R.R. v. Schmidt*, 177 U.S. 230 (1900). CHC specifically referred to the analysis of this case in Mauck's brief in support of this argument. The United States Supreme Court affirmed a judgment against one who was not originally a party to the case, but was brought in by order to show cause and condemned to pay the judgment. In *Louisville & Nashville R.R.*, the Cumberland & Ohio Railroad Co. mortgaged its road to secure some bonds and then it leased the road for thirty years to another railroad company, the Cincinnati & Lexington, with the condition that in the event that Cumberland could not pay the interest on the bonds then Cincinnati would. Without consent, the Cincinnati assigned and conveyed all of its property to the Louisville & Nashville Railroad Co. who took possession of the roads, operated them and collected all revenues. When the interest on the bonds were not paid, the trustee under the

mortgage sued Cincinnati. *Id.* at 230-31. Louisville & Nashville Railroad was not named as a defendant but it had employed counsel, filed all pleadings on behalf of Cincinnati**,** was in court defending the action and controlled the case. Once a judgment was rendered, the plaintiff trustee requested that Louisville & Nashville be compelled to pay the judgment as the real party in interest. The United States Supreme Court rejected Louisville & Nashville's due process argument finding that:

> the Louisville and Nashville became voluntarily, in the name of the Cincinnati and Lexington, the real, although not the nominal, defendant in the cause, and during the long years of this protracted litigation was in legal effect an actor in the courts of Kentucky seeking, by every possible means, to defeat the claim of the plaintiff.

*Louisville & Nashville R.R.,* 177 U.S. at 237.

¶20. Although this may seem similar to the case at bar, there are very important differences. Unlike the Louisville & Nashville R.R. Co**.,** First Federal did not take possession of the hotel and intervened in the suit as a party defendant in order to protect its security interest in the property. Although First Federal did significantly participate in the litigation of the case it did not have possession or control of the property and was not an assignee to the lease until it foreclosed on the property in 1992, while the case was pending on appeal in this Court. The City also significantly participated in the litigation but represented itself as a creditor. In addition, neither the City nor First Federal are arguing any procedural due process violation which was the central issue in *Louisville & Nashville R.R. Co*. Simply because an intervening defendant participates actively in the defense of a lawsuit should not mean that they become liable for a subsequent judgment although their rights might be affected with an adverse judgment. We hold that First Federal is not equitably estopped from arguing that it is not liable under the lease agreement for CHC's attorney's fees because it was not an assignee under the CHC and El-Ark lease at the time the complaint was filed and it intervened in the case as a party in interest. We also hold that the City is not equitably estopped from arguing that it is not liable under the lease agreement since CHC did not change its position based on reliance of the City's conduct.

### D. The Law of the Case Doctrine

¶21. CHC's principal argument is that the trial court had no authority to dismiss First Federal and the City from the case on remand. It argues that the chancery court was limited to determining the amount due for attorney's fees and expert costs, not for a determination of the liability of the particular parties, and it had no power to deviate from the final judgment and mandate of the Supreme Court.

¶22. As we have explained on several occasions:

The doctrine of the law of the case is similar to that of former adjudication, relates entirely to questions of law, and is confined in its operation to subsequent proceedings in the case. Whatever is once established as the controlling legal rule of decision, between the same parties in the same case, continues to be the law of the case, so long as there is a similarity of facts. This principle expresses the practice of courts generally to refuse to reopen what has previously been decided. It is founded on public policy and the interests of orderly and consistent judicial procedure.

*TXG Intrastate Pipeline Co. v. Grossnickle*, 716 So. 2d 991, 1019 (Miss. 1997) (*quoting* **Simpson v. State Farm Fire & Cas. Co.**, 564 So. 2d 1374, 1376 (Miss.1990) (*quoting* **Mississippi College v. May**, 241 Miss. 359, 366, 128 So. 2d 557, 558 (1961))). The doctrine is not a principle of substantive law but a good rule of practice and "' . . . is of special significance as applied to questions of law as distinguished from decisions on questions of fact.'" **Goldsby v. State**, 240 Miss. 647, 664, 123 So. 2d 429, 434 (1960) (*quoting* 21 C.J.S., Courts, Sec. 195). *See also* **Florida Gas Exploration Co. v. Searcy**, 385 So. 2d 1293, 1295 (Miss. 1980).

¶23. CHC correctly states that the opinion of this Court rendered on December 23, 1993, specifically held that, "we reverse and remand for a determination of the proper amount of attorney's fees and expert costs." **Columbus Hotel**, 629 So. 2d at 610. First Federal argues that the mandate does not require that the chancery court hold it responsible for the Plaintiff's attorney fees. Rather, the mandate requires:

Motion of Columbus Hotel Company for Attorney Fees remanded for determination by the lower court. Appellees/ Cross-Appellants are taxed with all costs of this appeal.

YOU ARE COMMANDED, that execution and further proceedings as may be appropriate forthwith be had consistent with this judgment and the Constitution and Laws of the State of Mississippi.

First Federal and the City argue that when reading this Court's opinion it is abundantly clear that First Federal was not a party to be held responsible for attorney fees. The opinion explains that the right to attorney fees is derived from the lease agreement. The Court said:

According to the lease, CHC is entitled to all expenses arising out of the breach, including attorney's fees. We find that the intent of the parties manifest in the language of this provision entitles CHC to its attorney's fees and expert fees. . . . Therefore, as to this issue, we reverse and remand for a determination of the proper amount of attorney's fees and expert costs.

*Columbus Hotel*, 629 So. 2d at 610.

¶24. Our previous opinion in *Columbus Hotel Co. v. Pierce,* 629 So. 2d 605 (Miss. 1993), gives no indication that liability for attorney fees as to First Federal and the City of Columbus was the law of the case. It does not discuss a legal basis for or facts in support of such liability on the part of these two entities. In fact, it does not mention the City of Columbus at all and mentions First Federal only to relate that executing a deed of trust in favor of First Federal by the lessees was at least one occasion of breach of the lease agreement by the lessee. It follows that there can be no application of the law of the case doctrine on this issue.

## E. Uniform Chancery Court Rule 1.07

¶25. CHC contends that First Federal and the City violated Uniform Chancery Court Rule 1.07 when they presented the same motions to Chancellor Colom after Chancellor Brand had denied the motion and this Court denied the motion for interlocutory appeal by permission stating that the petition lacked merit. Rule 1.07 of the Uniform Chancery Court Rules provides:

> When any matter been presented [sic] to one of the Chancellors and the relief denied, the attorney shall not go to one of the other Chancellors and present the same matter.

¶26. First Federal argues in response that there was no such violation. First Federal explains that Chancellor Brand referred the case to Chancellor Colom after this Court denied the interlocutory appeal by permission and that no attorney for any party "shopped" for Judge Colom. It argues that Rule 1.07 does not preclude judges from handling matters referred to them by other judges, nor does it preclude a judge from withdrawing from a case or referring a case to another judge for handling. It contends that the rule simply precludes attorneys from taking a matter from one judge to another judge when they are dissatisfied with the ruling of the first one. It further argues that since Judge Colom had the power to accept the case from Judge Brand and had the power to reconsider previous rulings of the Court while ruling on the petition for attorney fees, then there was no violation of Rule 1.07.

¶27. CHC disputes that Chancellor Colom had the authority to reconsider the previous ruling of the Court. In support of this position it cites to 48A C.J.S. *Judges* § 68, at 654 (1981) which states, "As a general rule, a successor judge is precluded from correcting errors of law made by his predecessor or changing the latter's judgment or order on the merits, but this rule does not apply where the order or judgment is not of a final character." CHC argues that although Rule 54 of the Mississippi Rules of Civil

Procedure does allow for a revision of an order at any time before the entry of judgment, the rule does not contemplate the actions of a successor judge overruling a decision by her predecessor after an interlocutory appeal has been denied. CHC advances the argument that it would be perilous precedent to allow a successor chancellor to overrule her predecessor after interlocutory appeal has been denied on that very issue. "To do so flies in the face of the appellate process and the jurisdiction of the appellate court." CHC's argument elevates both this Court's denial of an interlocutory appeal and a denial of summary judgment to the status of a final judgment on the merits -- which neither is.

¶28. In response to a similar argument the Fifth Circuit, in *Gallimore v. Missouri Pac. R.R.*, 635 F.2d 1165, 1168-69 n.4 (5th Cir. 1981), stated:

> That suggestion, to the effect that our denial of the petition somehow constituted the "law of the case," was patently frivolous. The discretion afforded the courts of appeals in reviewing petitions for leave to bring § 1292(b) appeals has been likened to that of the Supreme Court in controlling its certiorari jurisdiction. 16 C. Wright & A. Miller, Federal Practice and Procedure § 3929, at 141 (1977) (citing S.Rep.No. 2434, 85th Cong., 2d Sess. (1958)). This court's denial of such a petition may be for any of a number of reasons largely unrelated to the perceived merits of the order sought to be appealed from, particularly in the context of interlocutory appeals from orders granting new trials. *See id*. § 3930, at 163-64. The district court correctly disregarded this line of argument by Gallimore.

*See also **In Re Knapp***, 536 So. 2d 1330, 1333 (Miss. 1988) (holding that the partial denial of an interlocutory appeal should not be viewed as an indication of how the issues should be resolved on appeal from a final judgment).

¶29. An order denying summary judgment is neither final nor binding upon the court or successor courts. ***Great So. Nat'l Bank v. Minter***, 590 So. 2d 129, 133, 135 (Miss. 1991); ***Newman v. Newman***, 558 So. 2d 821, 826 n.2 (Miss. 1990). Indeed, we have said that denying summary judgment is to be preferred in all but the most clear circumstances where the matter is to be tried on the merits by a chancellor without a jury. ***McMullan v. Geosouthern Energy Corp.***, 556 So. 2d 1033, 1036 (Miss. 1990). The case was assigned to Chancellor Colom for trial and judgment on the merits. At the point of final decision on the merits Chancellor Colom was duty bound to apply the law to the record then before the court, regardless of any prior ruling denying summary judgment. The argument that a different decision at this stage violates Chancery Court Rule 1.07 is without merit.

# F. The Lease Agreement

¶30. In her consideration of the issues previously presented in motions to dismiss and/or summary judgment filed by First Federal and the City, Chancellor Colom reasoned that First Federal and the City should not be ordered to pay any attorney's fees to CHC. She found that neither qualified as a lessee, assignee, or sublessee under the lease, but were merely creditors who were never actual parties to the lease agreement. She further found their participation in the litigation did not make them parties to the lease agreement. We agree.

¶31. There is no authority for the proposition that First Federal and the City's mere participation in the litigation makes them liable for attorney's fees to CHC. Absent contractual provisions or statutory authority, attorney's fees may not be awarded as damages in a case unless punitive damages are proper. *Greenlee v. Mitchell*, 607 So. 2d 97, 108 (Miss. 1992). Even if the City were a sublessee, without expressly assuming the obligations under the lease, it would not be liable under the lease. *See Goldberg v. L.H. Realty Corp*., 227 Miss. 345, 86 So. 2d 326 (1956). As to First Federal's liability under the lease, we have held that a bank's security interest in a lease does not render it liable for the obligations of the lessee. *MidSouth Rail Corp. v. Citizens Bank & Trust Co.*, 697 So. 2d 451 (Miss. 1997). We reasoned that because the assignment to Citizens Bank by MidSouth's lessee was only collateral for a loan from the bank, no liability on part of the bank was created by the assignor's action or inaction. *Id*. at 457.

# IV.

¶32. "The fixing of reasonable attorneys' fees is a matter ordinarily within the sound discretion of the trial court . . . ." *Gilchrist Tractor Co. v. Stribling*, 192 So. 2d 409, 418 (Miss. 1966). As we have stated:

> It is well settled in this State that what constitutes a reasonable attorney's fee rests within the sound discretion of the trial court and any testimony by attorneys with respect to such fee is purely advisory and not binding on the trial court. We will not reverse the trial court on the question of attorney's fees unless there is a manifest abuse of discretion in making the allowance. . . .

*Deer Creek Constr. Co. v. Peterson*, 412 So. 2d 1169, 1173 (Miss. 1982). The reasonableness of an attorney's fee award is determined by reference to the factors set forth in Rule 1.5 of the Mississippi Rules of Professional Conduct. This Rule provides in pertinent part:

> (a) A lawyer's fee shall be reasonable. The factors to be considered in determining

the reasonableness of a fee include the following:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

> (3) the fee customarily charged in the locality for similar legal services;

> (4) the amount involved and the results obtained;

> (5) the time limitations imposed by the client or by the circumstances;

> (6) the nature and length of the professional relationship with the client;

> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

> (8) whether the fee is fixed or contingent.

Miss. Rules of Professional Conduct 1.5. *See also **Richardson v. Canton Farm Equip., Inc.**, 608 So. 2d 1240, 1256 (Miss. 1992); **Carter v. Clegg**, 557 So. 2d 1187, 1192 (Miss.1990); **McKee v. McKee**, 418 So. 2d 764, 767 (Miss. 1982). In addition to these factors the Legislature gives additional guidance to courts in determining the reasonableness of attorney's fees by instructing the court to "make the award based on the information already before it and the court's own opinion based on experience and observation . . . ." Miss. Code Ann. § 9-1-41 (1991).

¶33. On remand CHC hired attorney Liston to aid Lipscomb in preparing a motion for attorney fees. Lipscomb filed a motion for attorney fees which was accompanied by affidavits by himself and Liston and several exhibits in support of the motion. CHC requested $107,510 as reasonable attorney's fees and $22,072.26 for expenses. CHC also requested that the court award an enhancement fee based on the Rule 1.5 factors and a contingency enhancement for a total fee request of $287,000. The chancery court granted CHC its requested expenses and also accepted that Lipscomb expended 654.25 hours and Liston expended 57.25 hours in litigation of this action at the rate of $150 per hour finding that this rate is within the range of fees customarily charged. However, due to the fact that Lipscomb failed to maintain contemporaneous time records, the court reduced the award to Lipscomb by ten (10%) percent from $98,137.50 to $88,323.75. Further, the chancery court denied any enhancement to the award. The total amount of the attorney's fee award is $97,696.25. It is this amount that CHC argues is inadequate, and Mauck and Smotherman challenge as excessive.

¶34. Mauck and Smotherman advance the argument that the chancellor erred when she did not exclude the estimates of hours spent that were not based on contemporaneous time records. They cite to several federal cases in support of this contention. The United States Supreme Court has stated that "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This does not mean as Mauck and Smotherman suggest that all hours not contemporaneously documented must be excluded. The record does reveal that Mr. Lipscomb, attorney for CHC, did fail to keep adequate time records for the period March 1988, through December 1993, and relies upon his estimate of hours expended during that period of time. However, the chancellor did address this failure by reducing CHC's fee award accountable to Lipscomb by ten percent (10%). The chancellor specifically found that the hours submitted are reasonable. The Fifth Circuit held that "[t]he proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Walker v. United States Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996). Therefore, the chancellor did not abuse her discretion by not disallowing all the time for which contemporaneous time records were not kept, and it was within her discretion to determine how much reduction is necessary when considering counsel's failure.

¶35. Mauck and Smotherman next argue that the hourly rate of $150 is not the customarily charged fee in the locality for similar legal services as required by Rule 1.5 (a)(3) and that it was an abuse of discretion to award a fee that uses nearly twice the rate which Mr. Gholson charged for the same time period. They base this contention on the fact that Mr. Gholson, the corporate attorney for CHC, charged $85 per hour for his services rendered in this case and a survey by the Mississippi Bar conducted in 1993, which reveals that the average hourly rate for a solo practitioner as of December 1992, was $84 per hour. The Chancellor specifically found that $150 is within the range of fees customarily charged in the legal community, that the court did not find the 1993 Bar survey convincing, and that none of the defendants submitted any affidavits regarding the customary fees charged in the legal community. The record reflects that as early as 1988, attorney Lipscomb testified that "[i]n Miami, Florida, I charge $175 to $250 per hour. From what I understand of the fees in Columbus, a reasonable fee would probably be between $100 and $150 per hour." The chancellor reviewed the respective qualifications of both Mr. Lipscomb and Mr. Liston and found that CHC's attorneys were experienced and possessed the requisite degree of skill necessary for cases of this nature. The chancellor did not abuse her discretion in finding that $150 is "within the range of fees charge in the legal community."

¶36. The United States Supreme Court adopted the "lodestar" method of calculating

reasonable attorney fees. In calculating the "lodestar" fee,

> [t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. . . .

*Hensley*, 461 U.S. at 433. The chancellor did this when she determined the reasonable number of hours expended and multiplied them by the rate of $150 per hour. She then adjusted the award according to the factors enumerated in Rule 1.5 of the Mississippi Rules of Professional Conduct. The Supreme Court in *Hensley* further stated:

> We reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters. It remains important, however, for the district court to provide a concise but clear explanation of its reasons for the fee award. . . .

*Hensley*, 461 U.S. at 437. Turning to the case at bar, in the opinion by the chancellor awarding attorney fees, she gave a complete analysis of her reasoning based on each of the eight factors listed in Rule 1.5 of the Mississippi Rules of Professional Conduct. Once again the chancellor did not abuse her discretion when she applied the factors of Rule 1.5 and awarded CHC $97,626.25 in attorneys' fees and $22,072.26 in documented expenses.

## V.

¶37. The chancery court specifically found that this is not an appropriate case for enhancement of the fee award. CHC complains that the chancellor erred when she did not enhance the fee award based on the fact that the fee arrangement between CHC and Lipscomb was contingent, CHC was extremely successful after almost six years of litigation, and that it has had to wait an additional three years before any award of attorneys' fees was granted. However, the chancellor in this case did consider these factors. She carefully documented her reasoning concerning each of these factors. The chancellor concluded that the case did not involve difficult legal questions, counsel was not precluded from accepting other business which would have created a conflict of interest, there were not extraordinary time limits imposed on the attorneys and the plaintiffs were ultimately successful at the appellate level which resulted in a gain of $1,150,000. CHC contends the chancellor failed to give any consideration to the fact that this was a contingent fee arrangement. But the record does not show the chancellor failed to consider this factor, instead the record reveals that the chancellor specifically

found that although the fee arrangement was contingent this was not a controlling factor, "what is controlling is what is reasonable".

¶38. Mauck and Smotherman argue that any award of attorney's fees to CHC is made by virtue of the language contained in the lease agreement, not because of the type of fee arrangement CHC made with its counsel. They cite to *City of Burlington v. Dague*, 505 U.S. 557 (1992), which it held that fee enhancements for contingency are incompatible and thus not permitted under federal fee-shifting statutes. The Supreme Court reasoned that to enhance an award because of a contingency fee arrangement would put duplicative weight on this one factor when considering all the lodestar factors. *Id.* The lodestar factors are enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), discussed in *Blanchard v. Bergeron*, 489 U.S. 87, 91 (1989), and are almost identical to those set forth in Rule 1.5 of the Mississippi Rules of Professional Conduct. Mauck and Smotherman also cite to another United States Supreme Court case which explained its position by stating that the "'novelty [and] complexity of the issues,' 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (*Delaware Valley I*) (*quoting Blum v. Stenson*, 465 U.S. 886, 898-900 (1984)). The Supreme Court further stated:

> These statutes [federal fee shifting statutes] were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client. . . .

*Delaware Valley I*, 478 U.S. at 565.

¶39. This approach followed by the Supreme Court in regard to federal fee shifting statutes is both logical and fair. The United States Supreme Court determined, that "[c]ontingency enhancement would make the setting of fees more complex and arbitrary, hence more unpredictable, and hence more litigable." *City of Burlington*, 505 U.S. at 566. We find that the chancellor correctly applied the factors enumerated in Rule 1.5 of the Mississippi Rules of Professional Conduct when she found that the attorney fee award in the case at bar should not be enhanced due to the contingent nature of the contract between CHC and its attorney Mr. Lipscomb, or due to the results obtained on behalf of CHC because of its attorneys' efforts. We hold that the attorney's fee award in the case *sub judice* was not an abuse of discretion and is affirmed.

## VI.

¶40. Mauck and Smotherman next claim that they should not be made to pay that portion of the attorney's fees which CHC incurred as a result of the intervention of First Federal and the City. A similar issue was addressed in *General Star Indem. Co. v. Pike County Nat'l Bank*, 706 So. 2d 227, 231 (Miss. 1998). Pursuant to a clause in the deed of trust the mortgagee was entitled to recover from the mortgagor reasonable attorneys' fees occasioned by the mortgagee's attempts to recover. *Id.* This Court held that pursuant to the mortgage agreement, where the subject property was destroyed by fire, the mortgagee had an equitable lien against the insurance proceeds in an amount which included not only the debt owed and the attorneys's fees incurred in proceedings against the mortgagor, but also included attorneys' fees incurred in proceedings against the insurer. Thus, according to the holding in *General Star*, the mortgagee is also entitled to recover attorneys's fees incurred in proceedings against third parties who become entangled in the recovery process. *Id.*

¶41. Another source of guidance is the holding in *Akamine & Sons, Ltd. v. Hawaii Nat'l Bank, Honolulu*, 503 P.2d 424 (Hawaii 1972). Akamine & Sons, the mortgagor, brought an action against the mortgagee, American Security Bank, seeking to enjoin the foreclosure sale of the subject property. *Id.* at 426. The holder of a second mortgage, Hawaii National Bank, intervened. *Id.* After the court refused to enjoin the sale of the property, the mortgage holders maintained the action, seeking resolution of the issue of which mortgagee had priority in the proceeds of the foreclosure sale. *Id.*

¶42. Another issue before the court was whether the mortgage agreement between Akamine & Sons and American Security Bank entitled American Security Bank to recover attorneys's fees from Akamine & Sons. *Id.* at 429. The mortgage agreement provided that Akamine & Sons would be responsible for all expenses incurred by the mortgagee as a result of a breach, including "an attorney's fee equal to twenty percent (20%) of the principal and interest due." *Id.* The Hawaii court held that Akamine & Sons' breach resulted in the proceedings between American Security Bank and Hawaii National Bank. *Id.* at 430. And, therefore, American Security Bank was also entitled to recover from Akamine & Sons those attorneys' fees incurred in the proceedings against Hawaii National Bank. *Id.*

¶43. Similarly, here, the lease agreement between Mauck and Smotherman and CHC provided that upon breach Mauck and Smotherman would be responsible for "all expenses occasioned by [lessor] by reason of [lessee's] breach, including reasonable attorney's fees." First Federal and the City intervened in order to protect their interests in the subject lease, which they acquired from Mauck and Smotherman. It is clear that

but for Mauck's and Smotherman's breach there would have been no need for CHC to become entangled in litigation with First Federal and the City in regard to this lease. The contract right to recover goes against the parties to the contract and includes those costs incurred in defending against interveners as a result of the breach. Thus, this assignment of error is without merit.

## VII.

¶44. The only authority CHC cites in support of its claim that it was error not to award it pre-judgment interest is Section 75-17-7 of the Mississippi Code of 1972. This Section provides:

> All judgments or decrees founded on any sale or contract shall bear interest at the same rate as the contract evidencing the debt on which the judgment or decree was rendered. All other judgments or decrees shall bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint.

Miss. Code Ann. § 75-17-7 (1991). Other than citing this statute, CHC does not present any argument why this statute is applicable to it. The Editor's note following this section clearly states that "[t]he provisions of this act shall apply only to causes of action accruing on or after July 1, 1989." Miss. Code Ann. § 75-17-7 (1991). The original complaint in this case was filed on May 13, 1988, which is prior to the application of this particular section. Recently we established the following criteria necessary in determining whether the lower court should award prejudgment interest:

> Prejudgment interest arises only where the amount owed is liquidated, or denial of the amount owed is in bad faith. *Simpson v. State Farm Fire & Casualty Co.*, 564 So. 2d 1374, 1380 (Miss.1990). "As to whether a claim is liquidated, interest has been denied where 'there is a bona fide dispute as to the amount of damages as well as the responsibility for the liability therefor.'" *Id.* (citation omitted). The plaintiff must make a proper demand or request for prejudgment interest, including from when it is allegedly due, in the pleadings. *Id.* (citation omitted).

*Thompson Mach. Commerce Corp. v. Wallace*, 687 So. 2d 149, 152 (Miss. 1997).

¶45. In the case at bar when examining the motion for attorney fees filed by CHC, there is not a proper demand or request for prejudgment interest, much less a claim for a time period it is allegedly due. The chancellor did award interest at the rate of ten percent (10%) from September 30, 1996, the date of the judgment. Based on *Thompson Mach. Commerce Corp. v. Wallace*, prejudgment interest in this case is not

warranted, and the chancellor did not abuse her discretion in denying an award of prejudgment interest.

## VIII.

¶46. Finally, CHC seeks additional attorneys fees for work associated with this appeal. We conclude that this request should be assessed based upon the same criteria as the original award for fees as provided by the lease agreement. We remand this matter to the chancery court to determine whether CHC is entitled to additional fees and the amount thereof, if any.

## CONCLUSION

¶47. For the forgoing reasons, the judgment of the chancery court is affirmed.

¶48. **AFFIRMED AND REMANDED.**

**SULLIVAN AND PITTMAN, P.JJ., SMITH, WALLER, AND COBB, JJ., CONCUR. McRAE, J., DISSENTS WITHOUT WRITTEN OPINION. PRATHER, C.J., AND MILLS, J., NOT PARTICIPATING.**

1. On motion for clarification, this opinion has been revised to add Section VI below.