# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-CA-00038-SCT

*IN THE MATTER OF THE ESTATE OF ALEXANDER TAYLOR GILLIES, JR.,
DECEASED: JOHN B. GILLIS AND LUCKETT LAW FIRM, P.A.*

*v.*

*ALEXANDER SCOTT GILLIES, AS THE ADMINISTRATOR OF THE ESTATE OF
ALEXANDER TAYLOR GILLIES, JR., DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/06/1999 |
| TRIAL JUDGE: | HON. JOHN C. ROSS, JR. |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | JOHN B. GILLIS |
| ATTORNEY FOR APPELLEE: | PATRICK F. McALLISTER |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 10/31/01 |
| MOTION FOR REHEARING FILED: | 11/14/2001 |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. This is an appeal from the judgment of the Alcorn County Chancery Court granting a quantum meruit attorney fee award to the appellant, John B. Gillis of the Luckett Law Firm (LLF). LLF, with Gillis in charge of the case, initially represented Marietta Gillies (Marietta), in her capacity as administratrix of the estate of her deceased son, Alexander Taylor Gillies, Jr. The representation was for a professional malpractice claim against the decedent's previous attorneys. On April 6, 1999, the lower court removed Marietta as administratrix and voided LLF's contingency fee contract with the estate regarding the legal malpractice claim. However, the lower court ultimately awarded Gillis $21,120, on a quantum meruit basis, in compensation for his services in initiating and securing a $450,000 settlement for the estate, on the malpractice claim.

¶2. LLF, through Gillis, represented the Gillies estate from December 31, 1997, until April 1999. The chancellor approved the estate's retention of Gillis, on a contingency fee basis, to pursue the legal malpractice claim, and Gillis filed suit against the Langston, Langston, Michael and Bowen law firm (LLMB) because of their failure to timely file and pursue civil rights and personal injury claims.[1]

¶3. Ruby Gillies (Ruby), the wife of the decedent, sought to remove Marietta as adminstratrix on the basis that Marietta's appointment was the result of fraud, claiming that she and her son, Scott Gillies, were the sole heirs of the decedent. Ruby also sought to set aside the contingency fee contract entered into by and between Marietta, as administratrix, and Gillis, on behalf of LLF. Marietta filed a petition for determination of heirship, admitting that Ruby was the decedent's wife at the time of the death, but claiming that Ruby had waived her rights to recover any proceeds of the estate. Prior to the evidentiary hearing on Ruby's complaint, Marietta filed an amended petition in which she acknowledged that the decedent and Scott's

mother had been married approximately 14 months at the time of Scott's birth. The chancellor found that Ruby and Scott were the sole and only heirs at law of the decedent, removed Marietta as administratrix, appointed Scott as successor administrator and voided LLF's contingency fee contract. Neither LLF nor Marietta appealed this judgment.

¶4. Gillis, representing Marietta individually, was essentially the lead counsel in negotiating the settlement of the legal malpractice claim against LLMB.[(2)] As administrator of the estate, Scott participated in negotiations concerning the legal malpractice claim. After negotiations, Scott filed a petition to compromise the claim for $450,000 to the estate and to establish a quantum meruit fee for Gillis. The chancellor approved the compromise and continued the hearing on the quantum meruit issue. In a later evidentiary hearing, the chancellor awarded Gillis a quantum meruit fee of $21,210. Gillis and LLF timely filed their notice of appeal to this court, raising four issues on appeal:

> I. WHETHER THE CHANCELLOR COMMITTED MANIFEST ERROR AND ABUSED HIS DISCRETION IN AWARDING THE APPELLANTS A $21,210 ATTORNEYS' FEE BASED UPON THE RECOVERY OF $450,000 IN A COMPROMISE AND SETTLEMENT OF A CLAIM THAT SURVIVED THE DECEDENT WHERE THE APPELLANTS INVESTIGATED AND PROSECUTED THE CLAIM DURING THE PERIOD OCTOBER 1997 TO APRIL 1999, AND WHERE THE DOCUMENTARY EVIDENCE SHOWS AND THE APPELLEE AND ALL INTERESTED PERSONS ADMIT THAT THE APPELLEE DID VIRTUALLY ALL OF THE WORK NECESSARY TO OBTAIN THE RECOVERY, AND WHERE THE APPELLANTS OBTAINED A DECREE FROM THE CHANCELLOR ON DECEMBER 31, 1997 AUTHORIZING THEM TO REPRESENT THE FORMER ADMINISTRATRIX AS TORT CLAIMS COUNSEL, AND WHERE THE DECREE AUTHORIZING THE APPELLANTS TO REPRESENT THE FORMER ADMINISTATRIX APPROVED A 33 1/3 PERCENT CONTINGENCY FEE, AND WHERE THE CURRENT ADMINISTRATOR AND THE DECEDENT'S WIDOW AND THEIR LAWYERS ENTERED INTO AN EXPLICIT, WRITTEN AGREEMENT ON MARCH 29, 1999 WHEREBY NO CHALLENGE WOULD BE MADE TO THE APPELLANTS' RECOVERABLE FEES, AND WHERE THE CHANCELLOR OPTED NOT TO ENFORCE THE MARCH 29, 1999 AGREEMENT NOT TO CHALLENGE THE APPELLANTS' RECOVERABLE FEES, AND WHERE THE ULTIMATE FEE AWARDED BY THE CHANCELLOR REPRESENTED 4.7% OF THE $450,000 RECOVERY?

> II. WHETHER THE CHANCELLOR ERRED AND ABUSED HIS DISCRETION IN REFUSING TO AWARD LITIGATION EXPENSES AND PREJUDGMENT INTEREST?

> III. WHETHER THE CHANCELLOR ERRED IN IDENTIFYING THE PROCEDURAL POSTURE OF THE CASE AND THE RELIEF SOUGHT BY THE APPELLANTS, AND WHETHER THESE ERRORS RESULTED IN A JUDGMENT THAT WAS ERRONEOUS AS A MATTER OF LAW?

> IV. WHETHER THE CHANCELLOR ERRED IN IDENTIFYING THE "SPECIFIC ISSUE" AT THE TRIAL COURT LEVEL, AND WHETHER THIS ERROR RESULTED IN A JUDGMENT THAT WAS ERRONEOUS AS A MATTER OF LAW?

¶5. The Estate cross-appealed, raising the following issue:

**V. WHETHER THE LOWER COURT ERRED BY FAILING TO REDUCE THE APPELLANTS' QUANTUM MERUIT FEE DUE TO THEIR CONFLICT OF INTEREST ARISING OUT OF THEIR DUAL REPRESENTATION OF MARIETTA AND THE ESTATE?**

## FACTS

¶6. On July 6, 1991, Alexander Taylor Gillies, Jr, (Gillies) was beaten by Delbert L. Brown, a pretrial detainee, while they were incarcerated at the City of Corinth jail. Gillies died on February 14, 1993, due to myocardial infarction. Before his death, Gillies hired LLMB to prosecute his claims against the persons and entities responsible for the beating and the resultant injuries. LLMB failed to file a lawsuit within the one-year statute of limitations period for assault and battery claims. LLMB also failed to file a lawsuit or settle timely Gillies's claims against the City of Corinth.

¶7. On September 9, 1993, Marietta was appointed administratrix of Gillies's estate. In October of 1997, Marietta learned from her attorney, John B. Gillis, that LLMB had failed to prosecute the assault claim and, in her capacity as administratrix, she hired Gillis and LLF to prosecute the professional liability claim against LLMB on a contingency fee basis. The contingency fee contract was approved by the Chancery Court of Alcorn County.

¶8. LLMB's insurance carrier, American Guarantee and Liability Company, an insurer of the Zurich group (Zurich), provided LLMB with $500,000 per claim coverage and an aggregate policy limit of $1,000,000. Zurich retained Robert Pedersen (Pedersen) to defend LLMB, and retained James Dukes, Sandy Sams and Bill Murphree as coverage counsel. Timothy Baludcci (Balducci) was retained by LLMB to provide direct representation.

¶9. A lawsuit was never actually filed against LLMB. Two claims were asserted, however. The first was the professional liability claim for failure to file within the statute of limitations. A second claim was one of professional negligence asserted against LLMB for failing to advise and represent Marietta regarding basic estate administration. All claims were ultimately settled through negotiation, with Gillis providing a substantial portion of the strategy, planning and negotiating.

¶10. After the settlement process began, questions arose concerning whether Ruby and Scott were heirs. After consulting with Marietta, Gillis informed Pedersen that Scott was, at best, the decedent's illegitimate child. Pedersen informed Gillis that he was concerned about Marietta's authority to settle the estate's claims. Mediation was attempted on January 18, 1999, and was unsuccessful.

¶11. Ruby then filed her complaint to remove Marietta as administratrix and void LLF's contingency contract. Three days later, Marietta filed her initial petition to determine heirship, claiming that Ruby had waived her interest in the estate and that Scott might be the illegitimate son of the decedent. The hearing on Ruby's petition was held on March 11, 1999. Scott appeared at this hearing, represented by counsel. After the evidentiary hearing, the chancellor took the case under advisement.

¶12. A second mediation session was conducted on March 29, 1999, even though Marietta's authority to settle was in doubt. LLF did, however, procure what it describes as a written waiver of any claimed conflict of interest from Ruby and Scott, through counsel, on March 26, 1999, so that LLF could proceed in

representing the interests of all concerned at the March 29, 1999 mediation. The agreement read as follows:

> Ruby Gillies and her lawyer, James E. Price, Jr., and Alexander Scott Gillies, and his lawyers, Partrick F. McAllister and Robert E. Williford, covenant and agree that in consideration of the services rendered for them by John B. Gillis of Luckett Law Firm, P.A. they will not attack the validity of John B. Gillis' and Luckett Law Firm, P.A.'s fee arrangement beyond the issues presently before the Chancery Court of Alcorn County, Mississippi, in Ruby Gillies' complaint filed on or about February 9, 1999.

The estate claims the agreement was not meant to be a complete waiver but rather that "the parties agreed to present a united front at the mediation and have the chancery court resolve the interest issue and the value of LLF's services to the estate, should the chancellor terminate LLF's contingency contract at a later date."

¶13. At the conclusion of the mediation session, Zurich offered $500,000 to settle the estate's claims and $50,000 to settle Marietta's individual claim (without any agreement that the claims were actually separate claims). LLF counter offered to settle the estate's claims for $500,000 but with Marietta's claim unresolved. On April 1, 1999, Zurich responded to LLF by offering to pay $550,000 to settle all claims. Eight days later, Balducci advised Gillis that LLMB would pay an additional $50,000 toward a global settlement of all claims, thus putting a total of $600,000 on the table. On April 8, 1999 the chancellor granted Ruby's petition to remove Marietta as administratrix and to void the LLF/Marietta contingency fee contract. The order also set aside all acts of Marietta as administratrix. Later that month, Scott was appointed as successor administrator.

¶14. Marietta's individual claim was settled for $150,000, which included the $50,000 contribution from LLMB. Gillis and LLF was paid a 40% contingency fee of $60,000 on Marietta's recovery.

¶15. On July 28, 1999, the estate filed a petition seeking approval to compromise the estate's claims against LLMB for $450,000 and to establish LLF's quantum meruit fee. Additionally, the estate sought to deny or limit LLF's quantum meruit fee for the following reasons:

> First, LLF refused to provide its former client, the Estate, with records establishing the time incurred by LLF prosecuting the Estate's claim prior to Marietta's removal and the voiding of the LLF contract. Secondly, the Estate believed that LLF would seek to recover fees from the Estate for the work actually performed for Marietta, individually. Finally, the Estate contended that LLF's quantum meruit should be limited due to LLF's conflict of interest arising out of its representation of Marietta, as administratrix and individually, since the Estate contended it adversely effected [sic] the amount of the Estate's settlement.

¶16. Naturally, there were factual disputes regarding the number of hours Gillis worked and the proper hourly rate. The chancellor considered the eight factors delineated in Rule 1.5 of the Mississippi Rules of Professional Conduct and awarded LLF a quantum meruit fee of $21,210, based on Gillis's customary hourly rate of $140 for 151.5 hours. LLF had claimed 202 hours but the chancellor reduced that amount to 151.5 to compensate for LLF's separate representation of Marietta. The chancellor found that it was admitted by all involved that Gillis did a commendable job in perfecting the settlement involved in this matter." The chancellor did not award any expenses, costs or interest in the case. Finally, the chancellor also concluded that it was not necessary to consider LLF's alleged conflict of interest, in light of its ruling on

the other grounds.

## STANDARD OF REVIEW

¶17. A limited standard of review is employed by this Court in reviewing decisions of a chancellor. ***Reddell v. Reddell***, 696 So.2d 287, 288 (Miss. 1997). The findings of a chancellor will not be disturbed on review unless the chancellor was manifestly wrong, clearly erroneous or applied the wrong legal standard. ***Bank of Miss. v. Hollingsworth***, 609 So.2d 422, 424 (Miss. 1992)(citing ***Smith v. Dorsey***, 599 So.2d 529 (Miss. 1992); ***Bowers Window & Door Co. v. Dearman***, 549 So.2d 1309 (Miss. 1989)). The standard of review regarding a chancellor's decision is the abuse of discretion standard. ***McNeil v. Hester,*** 753 So.2d 1057, 1063 (Miss. 2000)(citing ***Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc.***, 716 So.2d 200, 204 (Miss. 1998).

¶18. The standard of review regarding attorneys' fees is the abuse of discretion standard. "The fixing of reasonable attorneys' fees is a matter ordinarily within the sound discretion of the trial court. . . ." ***Gilchrist Tractor Co. v. Stribling***, 192 So.2d 409, 418 (Miss. 1966). This Court has held:

> It is well settled in this State that what constitutes a reasonable attorney's fee rests within the sound discretion of the trial court and any testimony by attorneys with respect to such fees is purely advisory and not binding on the trial court. We will not reverse the trial court on the question of attorney's fees unless there is a manifest abuse of discretion in making the allowance....

***Mauck v. Columbus Hotel Co.***, 741 So.2d 259, 269 (Miss. 1999).

## ANALYSIS

I. WHETHER THE CHANCELLOR COMMITTED MANIFEST ERROR AND ABUSED HIS DISCRETION IN AWARDING THE APPELLANTS A $21,210 ATTORNEYS' FEE BASED UPON THE RECOVERY OF $450,000 IN A COMPROMISE AND SETTLEMENT OF A CLAIM THAT SURVIVED THE DECEDENT WHERE THE APPELLANTS INVESTIGATED AND PROSECUTED THE CLAIM DURING THE PERIOD OCTOBER 1997 TO APRIL 1999, AND WHERE THE DOCUMENTARY EVIDENCE SHOWS AND THE APPELLEE AND ALL INTERESTED PERSONS ADMIT THAT THE APPELLEE DID VIRTUALLY ALL OF THE WORK NECESSARY TO OBTAIN THE RECOVERY, AND WHERE THE APPELLANTS OBTAINED A DECREE FROM THE CHANCELLOR ON DECEMBER 31, 1997 AUTHORIZING THEM TO REPRESENT THE FORMER ADMINISTRATRIX AS TORT CLAIMS COUNSEL, AND WHERE THE DECREE AUTHORIZING THE APPELLANTS TO REPRESENT THE **FORMER ADMINISTRATRIX APPROVED A 33 1/3 PERCENT CONTINGENCY FEE, AND WHERE THE CURRENT ADMINISTRATOR AND THE DECEDENT'S WIDOW AND THEIR LAWYERS ENTERED INTO AN EXPLICIT, WRITTEN AGREEMENT ON MARCH 29, 1999 WHEREBY NO CHALLENGE WOULD BE MADE TO THE APPELLANTS' RECOVERABLE FEES, AND WHERE THE CHANCELLOR OPTED NOT TO ENFORCE THE MARCH 29, 1999 AGREEMENT NOT TO CHALLENGE THE APPELLANTS' RECOVERABLE FEES, AND WHERE THE ULTIMATE FEE AWARDED BY THE CHANCELLOR REPRESENTED 4.7% OF THE $450,000 RECOVERY?**

**¶19. This very lengthy assignment of error is essentially a question of whether the chancellor abused his discretion and reached an improper result regarding quantum meruit attorneys' fees where the contingency fee contract had been voided. The attorney Gillis had requested payment of $275 per hour for 202 hours of work. The chancellor awarded Gillis's firm, LLF, $21,210. The chancellor calculated this amount "by taking his hours worked (151.5) at $140.00 per hour. . . ."**

**¶20. In his opinion, the chancellor cites as his authority *Mauck v. Columbus Hotel Co.*, 741 So.2d 259 (Miss. 1999), in which this Court held "the reasonableness of an attorney's fee award is determined by reference to the factors set forth in Rule 1.5 of the Mississippi Rules of Professional Conduct." *Id.* at 269. The factors are as follows:**

> **(A) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:**
>
> **(1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly;**
>
> **(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;**
>
> **(3) the fee customarily charged in the locality for similar legal services;**
>
> **(4) the amount involved and the results obtained;**
>
> **(5) the time limitations imposed by the client or by the circumstances;**
>
> **(6) the nature and length of the professional relationship with the client;**
>
> **(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and**
>
> **(8) whether the fee is fixed or contingent.**

**M.R.P.C. 1.5**

**¶21. The chancellor did not specifically outline his findings, item by item, with regards to these factors. That is not required under *Mauck.* He did, however, note that he considered each of the eight factors and his opinion does include a reasonably thorough analysis of the factors. Gillis and LLF assert that the chancellor's discussion was "cursory" and constituted an abuse of discretion.**

**¶22. Concerning the first factor, the chancellor found that this was not a complex case, referring to the testimony of a local attorney that it was not complex because "the only dispute was the amount of settlement, after the defendant attorneys had admitted liability" early in the process. Gillis and LLF dispute this finding, noting that the case must have been complex because Pedersen, the insured's defense lawyer, billed over 400 hours on the case. The chancellor rejected a portion of the hours claimed by Gillis "as attributable to his efforts on the behalf of Marietta."**

**¶23. Gillis and LLF contend that the chancellor failed to consider the second factor, preclusion of**

other employment. LLF's senior partner testified that it "was forced to forego doing insured defense work offered by Zurich after LLF began prosecuting the claims against LLMB. LLF claims the fees from such work would have been at least $30,000 to $60,000 from two cases, and possibly significantly more. It does not appear that the chancellor considered this evidence to be convincing.

¶24. The third factor concerns the customary fee in that geographical area. Neither side questions the fact the chancellor applied this factor. Gillis requested $275 an hour. His senior partner testified that the firm would normally charge $140 an hour for Gillis's work, and Ruby's attorney, James E. Price, Jr. testified the hourly rate in the area would be $100 to $150 an hour. The chancellor noted these testimonies and allowed a fee of $140 an hour.

¶25. Gillis and LLF contend the chancellor failed to consider the fourth factor, the amount involved and the results. Clearly, this issue is at the heart of Gillis's complaint because the $21,120 is such a small percentage (4.7%) of the award, when Gillis and LLF would have received 33 1/3% under the original contingency fee contract. However, the purpose of a quantum meruit award is to compensate an attorney for actual services rendered. "Where the recovery is based in quantum meruit, the amount of recovery is 'limited to the monetary equivalent of the reasonable value of the services rendered to the decedent' for which payment has not been tendered." *Estate of Stewart v. Stewart*, 732 So.2d 255, 259 (Miss. 1999)(citing *Williams v. Mason*, 556 So.2d 1045, 1049 (Miss. 1990); *Liddell v. Jones*, 482 So.2d 1131, 1133 (Miss. 1986); *Collins' Estate v. Dunn*, 103 So.2d 425, 430 (1958).

¶26. The fifth and sixth factors are not particularly relevant since LLF's senior partner testified there were no significant time limitations imposed and no prior professional relationship with Marietta. There does not appear to have been any testimony concerning the seventh factor, the experience, reputation and ability of the attorney.

¶27. The eighth and final factor is certainly the crux of this case. In many cases, whether a fee is reasonable absolutely depends on whether the fee charged resulted from a fixed fee contract or a contingency fee contract. LLF argues the chancellor's award should reflect the fact that the original contract under which LLF rendered its services was a contingent contract. However, LLF did not appeal the chancellor's decision to void the contingency contract it had with Marietta. Now, LLF seeks a contingency enhancement, pointing to the risk and expense involved in taking the case. Essentially, LLF argues the reasonable quantum meruit fee in this case should be a reasonable percentage of the total settlement (and LLF suggests one-third is reasonable) and not an hourly rate. However, it is difficult to validate LLF's argument that it has been harmed, since the chancellor's decision compensates the firm for the hours it expended on this case and acknowledges that it received a $60,000 contingency fee from Marietta.

¶28. The issue for this Court is whether the chancellor abused his discretion. There is sufficient legal basis for the chancellor's determination that a quantum meruit contract should be based on an hourly rate and not a percentage of an award. The chancellor made the necessary legal findings and his factual findings are based on credible evidence. Therefore, the chancellor did not abuse his discretion, and this issue is without merit.

II. WHETHER THE CHANCELLOR ERRED AND ABUSED HIS DISCRETION IN

**REFUSING TO AWARD LITIGATION EXPENSES AND PREJUDGMENT INTEREST?**

¶29. The chancellor did not award costs to either party. LLF argues Marietta was entitled to certain expenses of the administration of the estate, which she personally paid, during the time she served as administratrix, as allowed under Miss. Code Ann. § 91-7-299 (1994). However, LLF notes that Marietta "has paid the expenses and the amount recovered would be tendered to [Marietta] with the proper report made to the chancery court." It is not clear why LLF is seeking the expenses as part of its quantum meruit fee.

¶30. LLF also argues that it is entitled to its costs under Rule 54(d) of the Mississippi Rules of Civil Procedure. This rule provides that, "[e]xcept when express provision therefor is made in a statute, costs shall be allowed as of course to the prevailing party unless the court otherwise directs." The chancellor evidently did not consider either party to be the "prevailing party" since no award of costs was made in this case.

¶31. LLF also submits that it is entitled to an award of prejudgment interest. Both parties cite *Simpson v. State Farm Fire & Cas. Co.*, 564 So.2d 1374, 1380 (Miss. 1990) (holding that "an award of prejudgment interest rests in the discretion of the awarding judge.") LLF does not provide this court with any authority that there should be a prejudgment interest award when a court awards a quantum meruit fee. Furthermore, this Court has rejected payment of post-judgment interest on an award of attorneys' fees in *In re Estate of Sparkman v. Smith*, 639 So.2d 1258, 1261 (Miss. 1994). Each component of this assignment of error is without merit.

> **III. WHETHER THE CHANCELLOR ERRED IN IDENTIFYING THE PROCEDURAL POSTURE OF THE CASE AND THE RELIEF SOUGHT BY THE APPELLANTS, AND WHETHER THESE ERRORS RESULTED IN A JUDGMENT THAT WAS ERRONEOUS AS A MATTER OF LAW?**

¶32. LLF challenges the chancellor's first paragraph in his opinion and judgment, which reads as follows:

> This matter is before the Court on a motion by John B. Gillis, attorney for Marietta Gillies, to approve certain fees for his part in settling a legal malpractice action. The attorneys for the other parties in the action, Ruby Gillies and Alexander Scott Gillies, contest the fee requested by John B. Gillis.

LLF argues that the chancellor made the following mistakes. (1) the matter was actually before the court on a motion by the administrator, Scott, to deny LLF a fee; (2) Gillis was not before the court as Marietta's attorney but rather appeared pro se and as counsel for LLF; (3) there was no "malpractice action", rather there was a claim that was settled; (4) Ruby and Scott were not parties since there was no action; and (5) Ruby never filed any papers contesting LLF's fee. The language used by the chancellor may be imprecise but that lack of precision is not sufficient to undermine the judgment.

¶33. LLF also criticizes the second paragraph of the opinion and judgment which follows in its entirety:

> The action arose after certain attorneys were employed by Alexander Taylor Gillies to file

suit against the City of Corinth, Mississippi, and an inmate at the city of Corinth, Mississippi jail as a result of a fight in the jail where Alexander Taylor Gillies was severely injured and subsequently died as a result of the incident.

LLF argues this paragraph demonstrates an attempt by the chancellor to draw a causal connection between the decedent's injuries and his death when the only evidence was to the contrary. However, the chancellor's statement is just as likely to be seen as a necessary historical explanation.

¶34. LLF also criticizes the third paragraph of the opinion and judgment, wherein the chancellor stated:

In her pleading presented to this Court for the administration of the estate, Marietta Gillies alleged that she was the sole and only heir at law of Alexander Taylor Gillies. Marietta Gillies was represented by attorney John B. Gillis. This Court also approved at that time a contingent fee contract for attorney Gillis to handle the legal malpractice claim against the defending law firm.

Again, LLF claims the chancellor failed to understand the posture of this case. LLF argues this paragraph suggests the pleadings to open the estate were filed by Gillis, when in fact they were filed by Ronald Michael. In fact, Gillis did not represent Marietta until the chancellor approved the contingency contract arrangement between Marietta and Gillis. LLF argues "a chancery court cannot be said to be acting within its discretion in issuing a judgment where the predicate facts are simply incorrect." LLF's criticisms in this assignment of error seem to have more to do with the quality of the chancellor's writing than with the quality of the chancellor's legal judgment. Most importantly however, LLF is unable to cite any convincing authority to support this assignment of error. Thus, this assignment of error is without merit.

IV. WHETHER THE CHANCELLOR ERRED IN IDENTIFYING THE "SPECIFIC ISSUE" AT THE TRIAL COURT LEVEL, AND WHETHER THIS ERROR RESULTED IN A JUDGMENT THAT WAS ERRONEOUS AS A MATTER OF LAW?

¶35. It is difficult to distinguish between LLF's third and fourth assignments of error. Now, LLF criticizes the eighth paragraph of the chancellor's opinion and judgment. The chancellor stated:

The specific issue before this Court today is a request by attorney Gillis for a fee of $55,550 from the estate of Alexander Taylor Gillies for his efforts in bringing about the settlement of their malpractice action.

LLF argues this paragraph indicates the chancellor failed to understand its request because it did not request the amount of $55,550. That amount was drawn from the LLF fee statement that was submitted to the court upon the request of the chancellor. Rather, LLF sought an award of one-third of the $450,000 recovered on the malpractice claim. This assignment of error seems to be simply another way for LLF to argue that the chancellor did not understand that: it desired, and should have awarded, a quantum meruit award calculated on a percentage basis and not the hourly rate actually used. This assignment of error is without merit.

V. WHETHER THE LOWER COURT ERRED BY FAILING TO REDUCE THE

APPELLANTS' QUANTUM MERUIT FEE DUE TO THEIR CONFLICT OF INTEREST ARISING OUT OF THEIR DUAL REPRESENTATION OF MARIETTA AND THE ESTATE?

¶36. This assignment of error was raised by the estate as a cross-appeal. The chancellor noted in his opinion and judgment that it was not necessary for him to consider whether there was a conflict of interest, in light of the court's "ruling hereinafter on other grounds." The estate argues the chancellor erred in failing to consider the issue because "LLF had a conflict of interest arising out of its dual representation of Marietta, individually, and the estate in their malpractice claims against LLMB."

¶37. LLF admits it owed a duty of loyalty to Marietta but denies owing loyalty to the estate itself or to the beneficiaries of the estate. The estate cites authority from other jurisdictions while noting that this Court has never "squarely addressed this issue." *See Matter of Estate of Shano v. Shano*, 869 P.2d 1203 (Ariz. 1993); *Fickett v. Superior Ct.*, 558 P.2d 988, 990-91 (Ariz. 1976); *Estate of Fogleman v. Fegen*, 2000 WL 232003 ¶18 (Ariz. Ct. App. 2000); *Heyer v. Flaig*, 449 P.2d 161 (Cal. 1969); and *Meighan v. Shore*, 34 Cal. App 4th 1025 (Cal. 1995).

¶38. The estate also notes that this Court has not addressed the issue of whether an attorney's conflict of interest would warrant a reduction of the attorney's quantum meruit fee. The estate cites a recent Texas case which held that the award should be reduced, if for no other reason than to protect relationships of trust. *Arce v. Burrow*, 997 S.W.2d 229, 238 (Tex. 1999). LLF argues this issue has been waived because no interested party moved for disqualification of the lawyer with the alleged conflict of interest, citing *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So. 2d 1205 (Miss. 1996). *Wilbourn* is not on point, since it deals with the requirement that a party move for the disqualification of his *former* lawyer in a case involving successive representations.

¶39. It cannot be effectively argued by the estate that the chancellor applied the wrong legal standard when the law is unclear. The chancellor determined that he was able to set a proper amount for the quantum meruit fee without reaching the issue of the alleged conflict of interest, and thus he did not need to address the issue of reducing the fee. The appellee is unable to provide a convincing legal or factual argument why he should have concluded otherwise; thus, this assignment of error is without merit.

## CONCLUSION

¶40. None of the assignments of error raised in this appeal justifies reversing the chancellor who properly applied both the law and the facts to calculate a quantum meruit fee award to LLF. There was no manifest error. The chancellor was not required by any of the facts or the law to use a percentage basis for the calculation of the fee. The chancellor did not misapprehend the procedural posture or specific issues of the case. Finally, in regard to the cross-appeal on the issue of conflict of interest, there was no legal precedent requiring the chancellor to reduce the quantum meruit fee.

¶41. Finding no manifest error in the trial court's decision and its determination of the quantum meruit fee, we affirm.

**¶42. AFFIRMED.**

**PITTMAN, C.J., SMITH, MILLS AND WALLER, JJ., CONCUR. SMITH, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, J. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J. BANKS, P.J., AND EASLEY, J., JOIN IN PART.**

**SMITH, JUSTICE, CONCURRING:**

**¶43. I agree with the majority that the chancellor did not abuse his discretion in awarding Gillis a quantum meruit fee of $21,210, particularly in light of our holding in _Mauck v. Columbus Hotel Co._, 741 So. 2d 259 (Miss. 1999). I also agree with the majority that the estate's argument on cross-appeal is without merit. However, I disagree with the majority's determination that the estate did not waive this issue by failing to seek Gillis's disqualification.**

**¶44. The estate argued before the chancellor and on appeal that Gillis's fee should be reduced because of the conflict of interest which allegedly existed in Gillis' representation of Marietta. Gillis cites _Wilbourn v. Stennett, Wilkinson & Ward_, 687 So. 2d 1205 (Miss. 1996), arguing that the estate waived the conflict issue by failing to seek Gillis's disqualification when the conflict became apparent. The majority summarily dismisses Gillis' waiver argument, noting that _Wilbourn_ deals with the requirement that a party move for the disqualification of his former lawyer in a case involving successive representations. While I agree with the majority's description of the holding in _Wilbourn_, I believe the same rationale results in waiver in the case sub judice. As we observed in _Wilbourn_, the fact that a party is required to seek disqualification of counsel when a conflict first becomes apparent is based partially on the rationale that the law disfavors ambush tactics in litigation. _Id._ at 1217.**

**¶45. It is clear that the alleged conflict was apparent early on in the action at hand as evidenced by the fact that Gillis obtained a written waiver from Scott and Ruby so that he could represent all interests at mediation. Scott and Ruby were at all times represented by separate counsel who failed to object to the conflict, raising the issue only when Gillis sought remuneration from the estate. In my view, the estate should not be permitted to hold this issue in reserve for tactical purposes until it would be most helpful to its position. Accordingly, I would hold that the estate waived this issue by failing to seek Gillis's disqualification when the conflict became apparent.**

**WALLER, J., JOINS THIS OPINION.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

**¶46. Because the contingency fee contract had been approved by order of the chancery court, the contract cannot be voided at a later date after certain extenuating circumstances which did not exist in this case on behalf of the law firm. The law firm, based on the court's approval expended its time, monies, and efforts in negotiating a settlement for $600,000 with $450,000 going to the estate and $150,000 going to Marietta, the initial administrator of the estate. The firm detrimentally relied on all of the parties agreeing to their representation, as well as, the court approval of the contract. It is noted in footnote 2 of the majority opinion that the actual heirs, as well as the attorney for the heirs, later wrote letters of approval regarding the outstanding job of**

obtaining the settlement. Because the majority finds that the chancellor did not err in voiding the contract but instead modifying it and paying on a quantum merit basis, I dissent. This was a contract made and approved by the estate and approved by the court and an order was issued. Either the Luckett firm gets nothing or it gets its contract. Further, the majority may have "voided the contract" but allowed a quantum merit basis. Actually, it simply modified the terms of the contract. It did not void the contract.

¶47. I would reverse these findings. A valid contingency fee contract for attorney's fees had been executed and all parties, as well as the chancery court, agreed to it. The parties are estopped now to deny the contract after settlement has been reached. Further, the chancellor should have allowed litigation expenses and costs. Also, regarding the alleged conflict of interest, the firm should not be faulted because when it represents the estate, it represents all interested parties. For these reasons, I dissent.

¶48. A contract for payment on a contingency fee basis was made and all parties, namely the administrator and the decedent's widow, agreed not to contest the fee arrangement. The firm is entitled to 33 1/3% of $450,000, the settlement obtained for the estate, pursuant to the contingency fee contract made between the firm and the administrator and decedent's widow. The firm performed its obligations under the contract by obtaining a settlement for $600,000. When conflict arose as to the settlement of Marietta's $150,000 claim, the matter was settled between Marietta and the firm with a 40% contingency fee being paid to the firm by Marietta. The parties are estopped now after settlement has been obtained to deny the contingency fee contract.

¶49. There is no basis for not awarding the contingency fee. The chancellor approved the contingency fee contract and subsequently cancelled the contract upon dismissing Marietta as the administratrix of the estate. Even though the contract was cancelled, all parties agreed to the continued representation and contingency fee arrangement made with regard to the malpractice claim. The professional malpractice claim was undoubtedly the type of case typically taken on a contingency basis. In addition, the administrator and the decedent's widow agreed not to challenge the contingency fee agreement. The administrator clearly disregarded this agreement insisting upon payment on a quantum merit basis.

¶50. The firm's right to collect the contingency fee vested upon obtaining the settlement. We have held that an attorney's right to recover a contingency fee vests when the contingency, for which he has contracted, has occurred. *Tyson v. Moore*, 613 So. 2d 817, 824 (Miss. 1950) (*citing Pollard v. Joseph*, 210 Miss. 828, 834-35, 50 So. 2d 546, 548 (Miss. 1950)); *see also In re Estate of Sparkman*, 639 So. 2d 1258, 1261 (Miss. 1994). In *Tyson*, the attorney was pursuing two separate suits under the same "case" for his client. Upon procuring a final judgment on the first suit from which no appeal was made, we held that his fee had vested even though the second suit was still pending and could have had an impact on the recovery, and therefore, attorney's fees, in the first suit. *Id*. at 825.

¶51. Similarly, in the case at bar, the firm had an agreement with the administrator of the estate, the decedent's widow, and separately with Marietta, to negotiate the professional malpractice claim. The firm fully performed the obligations under the contract by obtaining the lump settlement of $600,000 ($450,000.00 for the estate and $150,000.00 for Marietta). All parties

acknowledged that the firm did the majority of the work in negotiating and obtaining the settlement. The parties were happy with the settlement and chose to write letters saying what a great job the firm had done. The professional malpractice claim had been completely resolved and finalized. When the firm obtained the settlement, the fee vested. Therefore, the parties cannot now challenge or disrupt the contingency fee contract. The chancellor cannot recognize the contract and then" void it out." He obviously found there was a contract, but instead of paying on a contingency fee arrangement of the contract, he changed the terms of it and gave a quantum merit recovery. The terms of the contract should be recognized, and the firm should receive the agreed upon contingency fee. Further, the chancellor should have allowed litigation expenses and costs.

¶52. Finally, the chancellor did not address the issue raised by the estate as reducing the quantum merit fee due to the alleged conflict of interest arising out of the dual representation of Marietta and the estate. The firm should not be faulted because when they represent the estate, they represent all interested parties. Even though the firm represented Marietta separately on other issues, all parties agreed to waive any claimed conflict of interest with regards to the professional malpractice claim.

¶53. In summary, a valid contract for attorney's fees on contingency had been executed and all parties agreed to it. The parties are estopped now to deny the contract after settlement has been reached. Additionally, the chancellor gave no basis for failing to award contingency fees. The chancellor should also have allowed litigation expenses and costs. Finally, the firm should not be faulted and their fees lowered for the alleged conflict of interest because when they represent the estate, they represent all interested parties. For these reasons, I dissent.

DIAZ, J., JOINS THIS OPINION. BANKS, P.J., AND EASLEY, J., JOIN THIS OPINION IN PART.

1. The decedent, Alexander Taylor Gillies, Jr. had been severely beaten by another inmate while incarcerated in the Corinth city jail. He subsequently died, but prior to his death had hired LLMB to represent him with regard to his civil rights and personal injury claims.

2. A letter dated 4-1-99 from the attorney for the estate to John B. Gillis states that "you have done an excellent job in negotiating a settlement for the estate in the amount of $500,000 . . . . " A similar letter on 4-2-99 from the attorney for Ruby Gillis states "I believe you have done an excellent job in getting the carrier to place $550,000 on the table." The $600,000 settlement that ultimately was reached included $550,000 from the insurer plus $50,000 from LLMB. The estate only received $450,000 because Gillis negotiated that his client, Marietta, the deceased's mother, would get $150,000 of the settlement.