KITCHENS, Justice,
for the Court:
¶ 1. This case concerns whether preneed contracts for funeral services were unilaterally transferable by customers from the original service provider, Waller Funeral Home (Waller), to another service provider, Coleman Funeral Home (Coleman). *312 Customers who had contracted with Waller had prepaid the costs of their funeral services and merchandise, and Waller had placed their money in a trust maintained by the Mississippi Funeral Directors Association (hereinafter “the Trust”). Coleman, along with Aubrey Parham, who previously had contracted with Waller for prepaid funeral services, filed a declaratory action asking the trial court to find that the prepaid funeral services contracts issued by Waller to its customers were unilaterally transferable by those customers to Coleman. Waller filed a counterclaim that alleged tortious interference with its contracts, false advertising, and defamation.[1] Waller argued in its motion for partial summary judgment, and the trial court agreed, that the contracts were valid, enforceable, irrevocable and nontransferable, and, thus, granted Waller’s motion. At trial, the jury was instructed accordingly.
¶ 2. Ultimately, the jury found in favor of Waller on all issues presented at trial and awarded both actual and punitive damages. Post-trial, upon the motion of Coleman, the circuit court reduced the punitive damages to $0 due to Coleman’s representation to the court that it had a negative net worth. Waller was awarded attorneys’ fees. Both parties have appealed the trial court’s final judgment.
¶ 3. We find that the trial court erred in allowing Waller to adduce speculative evidence about its alleged damages (future lost profits) for its contracting customers who are living, for whom no goods or services have been provided, on behalf of whom no payment from the Trust has been made to Coleman, and whose preneed funeral services contracts with Waller were found to be valid, binding, and nontransferable. Accordingly, we remand for a new trial on damages.

Facts and Procedural History

¶ 4. Waller and Coleman both operate funeral homes in Lafayette County, Mississippi. Waller opened in 1977, while Coleman opened its funeral home in 2004. Waller offered customers a preneed funeral trust program, which permitted them to make decisions regarding their desired funeral services and merchandise. The purpose of these preneed contracts was to fix the price of funeral services and merchandise, so the customer could avoid the risk of inflation. Waller placed any payment received from customers into the Trust. Over the years, Waller used three different contract forms for its preneed trust contracts. Form 3 was used before 1997. Form 2 was used from 1997 to 2002. Form 1 was used after 2002 and was subject to approval by the Office of the Secretary of State.
¶ 5. Upon its opening in 2004, Coleman advertised that it would perform funeral services for customers who previously had entered into preneed funeral contracts with other providers. One such consumer was Aubrey Parham, who sought to have his funeral services contract (entitled “Pre-Need Funeral Service Contract”), which he had entered into with Waller, transferred to Coleman. Waller issued a cease and desist letter to Coleman threatening a lawsuit for tortious interference with a contract, due to Coleman’s advertisements that stated Coleman would hon- or contracts with other funeral homes and due to Coleman’s having told Parham that it would honor his contract with Waller.
¶ 6. On or about May 18, 2005, Aubrey Parham died.[2] At the request of Par- *313 ham’s family, Coleman performed the funeral. The estate made requests for the refund of the prepaid funds, but Waller refused to release the funds from the Trust to the Estate. In the First Amended Complaint, the Parham estate alleged that a refusal to release the prepaid funds that had been held in trust for the purpose of funeral services constituted a conversion on the part of Waller and had caused the estate to suffer unnecessary attorney fees and other damages. Moreover, the complaint sought a declaratory judgment finding that Mississippi Code Sections 75-63-51 to 75-63-81 are unconstitutional, that customers may legally transfer their preneed contract forms to other providers, that Coleman had not engaged in tortious interference with a contract, that the Waller contracts contained a revocation clause, that (alternatively) the Waller contracts were contracts of adhesion and thus, void or voidable, and that the Waller contracts were ambiguous. Coleman also sought preliminary and permanent injunctions restraining and prohibiting Waller from filing suit against Coleman and requiring Waller to turn over the funds owed the Parham estate. Eventually, prior to trial, the Parham estate was paid funds out of the Trust, and thereafter, the estate paid Coleman for services rendered.
¶ 7. Waller filed its Answer, Affirmative Defenses and Counterclaim on August 15, 2005, against Coleman, and Kenny G. Coleman and Kenny G. (“Glen”) Coleman Jr. (collectively Coleman), alleging that Coleman intentionally had interfered with existing contractual relationships between Waller and its customers, and that Coleman had engaged in false, deceptive, and misleading advertising. Waller maintained in its counterclaim that Coleman had knowledge of the irrevocable nature of its contracts, but targeted Waller’s customers despite this knowledge. In its complaint, Waller asked for not less than $100,000 in compensatory damages, not less than $100,000 in punitive damages, reasonable attorney fees and expenses, and preliminary and permanent injunctive relief.[3]
¶8. Waller filed a motion for partial summary judgment based on its argument that the contracts were valid, irrevocable, nontransferable, and enforceable. Based on the pleadings filed by the parties and a hearing on the matter, the trial court granted partial summary judgment on this issue based on its finding that no genuine issues of material fact existed as to whether the contracts entered into by Waller and its customers for funeral services were valid and enforceable agreements that could not be transferred by the purchaser to another funeral service provider without Waller’s consent. In so doing, the court noted that the contracts lacked a revocation clause, and, furthermore, in some instances clearly stated they were irrevocable.[4]
¶ 9. Trial commenced on January 31, 2011, and the only remaining issues were those contained in Waller’s counterclaim. Ultimately, the jury awarded Waller $55,000 in compensatory damages and $25,000 in punitive damages. Post-trial, *314 Coleman filed a motion to amend the verdict and reduce the award of punitive damages, which the trial court granted, based on its finding that Coleman had a net worth of -$78,112 and that, consistent with Mississippi Code Section 11 — 1—65(B)(a), the punitive damages must be set at $0. Additionally, the trial court made a finding that Waller was entitled to $100,083.77 in attorneys’ fees and that the fees Waller requested were reasonable under McKee v. McKee, 418 So.2d 764 (Miss.1982), and Mississippi Rule of Professional Conduct 1.5. Aggrieved by the jury’s verdict and trial court’s award of attorneys’ fees to Waller, Coleman filed the instant direct appeal. Waller filed the instant cross-appeal.

Discussion

On Direct Appeal

I. Whether the trial court erred in granting Waller partial summary judgment and in instructing the jury that the consumers’ preneed funeral services contracts[5] with Waller were nontransferable to another service provider.
¶ 10. Coleman asks this Court to reverse the jury verdict and render judgment in its favor based on its contention that the contracts at issue could be transferred unilaterally by customers to a substitute provider. Alternatively, Coleman contends this Court should reverse and remand for a new trial to allow a jury to decide this issue. In reviewing a trial court’s grant or denial of summary judgment, our well-established standard of review is de novo. One South, Inc. v. Hollowell, 963 So.2d 1156, 1160 (Miss.2007) (citing Hubbard v. Wansley, 954 So.2d 951, 956 (Miss.2007)). Likewise, the interpretation of a contract is a question of law that this Court reviews de novo. Cherokee Ins. Co. v. Babin, 37 So.3d 45, 48 (Miss.2010) (citing Warwick v. Gautier Util. Dist., 738 So.2d 212, 215 (Miss.1999); Miss. State Highway Comm’n v. Patterson Enters., Ltd., 627 So.2d 261, 263 (Miss.1993)).
¶ 11. Coleman makes several arguments for the first time on appeal that it failed to make in support of its response in opposition to Waller’s motion for summary judgment and/or its own counter-motion for summary judgment, including: (1) Waller was not a party to the contract, but simply the trustee’s agent who accepted consumers’ funds to be held in trust for the benefit of those consumers; (2) Waller’s contracts are impermissible restraints on trade under the Sherman Act;[6] (3) industry standards dictate that preneed funeral service contracts are portable in nature and allow the consumer to choose another service provider at any time; and (4) the amendment to the Mississippi Pre-need Cemetery and Funeral Registration Act, effective July 1, 2012,[7] recognizes the portability of preneed services contracts; thus, it is evidence of the legislative intent to make preneed funeral services contracts transferable. See Miss.Code Ann. § 75-63-63 (Supp.2012). These arguments were never properly before the trial court and *315 should not be addressed by this Court. “[A] trial judge cannot be put in error on a matter not presented to him.” Chantey Music Publ’g, Inc. v. Malaco, Inc., 915 So.2d 1052, 1060 (Miss.2005) (quoting Southern v. Mississippi State Hosp., 853 So.2d 1212, 1214-15 (Miss.2003)). “This Court [will] not entertain arguments made for the first time on appeal as the case must be decided on the facts contained in the record and not on assertions in the briefs.” Id. (citing Parker v. Miss. Game & Fish Comm’n, 555 So.2d 725, 730 (Miss.1989)).
¶ 12. The argument that Coleman made in its complaint, and the argument made before this Court, is that the terms “irrevocable” and “non-transferrable,” as used in the contracts, are ambiguous terms that should be construed against Waller as the drafter of the contract. The elements of a valid contract are: “(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation.” Rotenberry v. Hooker, 864 So.2d 266, 270 (Miss.2003) (citation omitted). In the instant case, customers contracted for services and merchandise at the current rate, while Waller contracted for payment upon performance of services, which it contractually obligated itself to perform upon the contracting customer’s death.
¶ 13. Mississippi Code Section 75-63-63 (Rev.2009), as it existed at the time the contracts at issue were drafted, provided:
If the preneed contract contains a revocation clause, the contract insured or his representatives may name a substitute provider for the preneed contract at any time prior to the performance of the contract. The naming of the substitute provider shall be in writing .... Upon receipt of the notice of substitute provider, the original provider shall be relieved of all obligations to perform the contract including all obligations of reporting and accounting, and the substitute provider shall assume all obligations to perform the contract including all obligations of reporting and accounting.
Thus, contracts formulated after the January 1, 2002, effective date of Section 75-63-63 were required to have a revocation clause in order for customers to chose a substitute provider to perform his or her funeral services. Form 1, used by Waller after 2002 and subject to Section 75-63-63, did not contain a revocation clause; thus, those contracts were irrevocable and nontransferable under the statute.
¶ 14. Prior to January 1, 2002, the contracts were governed by common law contract principles. “[I]n the absence of some provision in the contract authorizing termination or cancellation, every contract is presumed irrevocable.” Theobald v. Nosser, 752 So.2d 1036, 1041-42 (Miss.1999). Neither Form 2 nor Form 3 contained a provision authorizing termination or cancellation, and both even contained the terms “irrevocable ” and “non-transferable.” Accordingly, we cannot find that the trial court erred in finding that these binding, enforceable agreements were not unilaterally transferable by Waller’s customers to Coleman.
II. Whether the trial court erred in allowing the jury to consider Waller’s tortious interference claim.
¶ 15. The elements for tortious interference with a contract are:
“(1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done *316 with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted.” Cenac v. Murry, 609 So.2d 1257, 1268-69 (Miss.1992) (citing Liston v. Home Ins. Co., 659 F.Supp. 276, 281 (S.D.Miss.1986)). The plaintiff must prove that an enforceable obligation existed between the plaintiff and another party. Merchants & Planters Bank of Raymond v. Williamson, 691 So.2d 898, 407 (Miss.1997). In addition, the plaintiff must prove that the contract would have been performed but for the alleged interference.
Par Industries, Inc. v. Target Container Co., 708 So.2d 44, 48 (Miss.1998). With a claim of this type, “a showing of specific intent is not required. Rather, intent can be inferred when a defendant knows a contract exists between two parties and does a wrongful act that he is certain or reasonably certain will interfere with the contract.” Neider v. Franklin, 844 So.2d 438, 437 (Miss.2003) (citing Cranford v. Shelton, 378 So.2d 652, 655 (Miss.1980)).
¶ 16. The trial court already had resolved the issue that an enforceable obligation existed between Waller and its customers. Waller then had to prove the four elements of tortious interference, in addition to proving that the service contracts would have been performed but for Coleman’s interference.
¶ 17. After having advertised that it would honor Waller’s preneed funeral services contracts, Coleman drafted and had customers sign a document entitled “Official Transfer Notice,” which specifically referenced Waller’s preneed trust contract, making it, in essence, a new contract for goods and funeral services with Coleman. Although Coleman maintained at trial that it had no knowledge the contracts were irrevocable, Waller cites evidence that, when Coleman filed its complaint with the Secretary of State’s office against Waller, the Secretary of State made it clear that Mississippi law allowed for irrevocable preneed services contracts and that Parham’s contract with Waller was irrevocable. Ordinarily, “[w]hen testimony is contradicted, this Court will defer to the jury, which determines the weight and worth of testimony and the credibility of the witness at trial.” Venton v. Beckham, 845 So.2d 676, 684 (Miss.2003) (citation omitted).
¶ 18. However, we find that Waller’s claims of tortious interference with contracts of those customers still living at the time of trial did not meet the fourth element of a claim of tortious interference with a contract in that Waller could not prove that actual damages or loss had resulted, given that the trial court had held that those living customers had irrevocable, nontransferable contracts with Waller to be performed upon their deaths. The money paid into the respective trusts by those living customers still is being held in trust. For Waller to be paid for those customers’ funeral services and goods, would create the risk of double recovery by Waller upon the death of those customers with whom Waller continues to have valid contracts. Accordingly, Waller was entitled only to damages in the form of lost profits for those contracts that were actually performed by Coleman (irrespective of whether Coleman was paid in full for those goods and services). We agree with Coleman that evidence adduced as to Waller’s future lost profits for living customers, with whom Waller still has enforceable contracts, was speculative in nature and warrants a remand for a new trial on damages. Moreover, we agree with Coleman that any funeral services contracts performed by Coleman with Waller’s con *317 sent cannot be claimed by Waller as lost profits.
III. Whether the trial court erred in allowing the jury to consider Waller’s false and deceptive advertising claim.
¶ 19. The Lanham Act provides a civil remedy for any person damaged or likely to be damaged by false or misleading representation of fact in commercial advertising or promotions which misrepresent the nature of his or another person’s goods, services, or commercial activities. 15 U.S.C.A. § 1125(a)(1) (2009). To sustain a claim of false and misleading advertising pursuant to the Lanham Act, Waller had to show that Coleman’s advertisements were either false, or if not literally false, then likely to mislead and confuse consumers. Id. At trial, Waller placed the published advertisements into evidence, which showed Coleman making claims that prepaid funeral services, insurance policies, and funeral plans were unilaterally transferable by Waller’s customers with contracts. In addition to ads published in local newspapers, Coleman advertised on several billboards, one of which was in close proximity to Waller Funeral Home.
¶ 20. A prima facie case of false advertising under the Lanham Act requires the plaintiff to establish:
(1) A false or misleading statement of fact about a product;
(2) Such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers;
(8) The deception is material, in that it is likely to influence the consumer’s purchasing decision;
(4) The product is in interstate commerce; and
(5) The plaintiff has been or is likely to be injured as a result of the statement at issue.
Pizza Hut, Inc. v. Papa John’s Int’l, Inc., 227 F.3d 489, 495 (5th Cir.2000). The jury was instructed on these elements.
¶ 21. Coleman maintains that the advertisements reflected its knowledge of the industry custom and practice and that it did not intend to mislead the public. To the contrary, Waller argues that Mississippi law, at the time the contracts were executed, allowed for irrevocable funeral services contracts, and that Coleman had knowledge that the contracts were nontransferable, yet advised potential customers to the contrary in its ads.
¶ 22. The evidence shows that Coleman had actual knowledge that Mississippi law allowed for irrevocable funeral services contracts and that, absent a revocation clause, customers could not unilaterally transfer their policies without Waller’s consent. Coleman filed a complaint with the Secretary of State’s office,[8] listing several of Waller’s customers as complainants, and asking that office to advise him as to whether those contracts were transferra-ble. The Secretary of State’s office responded in a letter dated August 12, 2004, advising Coleman that Mississippi Code Sections 75-63-55(6) and 73-63-63 “clearly contemplate[ ] irrevocable contracts” and provide the procedure for substituting providers if the contract contains a revocation clause. The office further determined that Aubrey Parham’s contract with Waller was irrevocable due to its lack of a revocation clause and that it did not appear as though *318 “he can change providers under this contract.”
¶23. This was an issue for the jury to resolve. The jury weighed the conflicting evidence and found in favor of Waller. This Court resolves “all conflicts in the evidence and every permissible inference from the evidence” in favor of the verdict. Venton, 845 So.2d at 684. This assignment of error is without merit.
IV. Whether the trial court erred in granting Waller’s attorneys’ fees.
¶ 24. Under the Lanham Act, the trial court in “exceptional cases” may award the prevailing party reasonable attorney fees. 15 U.S.C.A. § 1117(a) (2009).
The prevailing party bears the burden of demonstrating the exceptional nature of the case by clear and convincing evidence. An exceptional case is one where the violative acts can be characterized as malicious, fraudulent, deliberate, or willful. The necessary showing demands a high degree of culpability on the part of the infringer, for example bad faith or fraud.
Bd. of Supervisors for Louisiana State Univ. Agric. and Mech. College v. Smack Apparel Co., 550 F.3d 465, 491 (5th Cir. 2008). Coleman asks this Court to reverse the trial court’s award of attorneys’ fees due to its contention that the fees were unreasonable and arbitrarily awarded. An award of attorneys’ fees is reviewed by this Court for an abuse of discretion. Mississippi Power & Light Co. v. Cook, 832 So.2d 474, 478 (Miss.2002).
¶ 25. Coleman argues that Waller failed to meet its requisite burden of proof that Coleman’s ads were false and misleading, and that Coleman acted maliciously, fraudulently, and deliberately. The jury found this to be an exceptional case of false advertising under the Lanham Act.
¶ 26. Coleman makes several arguments that are without merit. First, Coleman argues that it should not be responsible for attorneys’ fees incurred relative to claims on which Waller did not prevail or damages it did not seek. In support of this premise Coleman cites A & F Properties, LLC v. Lake Caroline, Inc., 775 So.2d 1276, 1282-83 (Miss.Ct.App. 2000), in which the Court of Appeals held that the parties were entitled only to the attorneys’ fees for enforcing the specific contract provisions on which they prevailed. This was because the award of attorneys’ fees in A & F Properties was based on a contractual provision, not on statutory authority. Id. Generally, “unless a statute or contract provides for imposition of attorney fees, they are not recoverable.” Stokes v. Board of Directors of La Cav Imp. Co., 654 So.2d 524, 529 (Miss.1995) (quoting Century 21 Deep South Props., Ltd. v. Corson, 612 So.2d 359, 375 (Miss.1992)) (internal quotations omitted). Absent a “contractual provision or statutory authority providing for attorney fees, they may not be awarded as damages unless punitive damages are also proper.” Id. (quoting Smith v. Dorsey, 599 So.2d 529, 550 (Miss.1992)). In the instant case, statutory authority under the Lanham Act supported the award of attorneys’ fees as well as an award of punitive damages. Thus, attorneys’ fees were authorized.
¶ 27. Coleman further suggests that, pursuant to McKee v. McKee, 418 So.2d 764, 767 (Miss.1982), the trial court, in its determination of an appropriate amount of attorneys’ fees, was limited to “a sum sufficient to secure one competent attorney,” and that Coleman should not be responsible for fees of two attorneys. We do not interpret McKee as having held that attorneys’ fees in Mississippi are limited to the fees of only one lawyer.
*319 ¶ 28. Coleman also cites Gulf City Sea-foods, Inc. v. Oriental Foods, Inc., 986 So.2d 974, 979 (Miss.Ct.App.2007), in support of its contention that attorneys’ fees that are more than twice the amount of compensatory damages are unreasonable. However, Gulf City Seafoods, 986 So.2d at 979, was a collection suit, and the rule cited in that case is limited to collection suits.
¶ 29. Ordinarily, the fixing of reasonable attorneys’ fees is a matter within the sound discretion of the trial court. Mauck v. Columbus Hotel Co., 741 So.2d 259, 269 (Miss.1999) (quoting Gilchrist Tractor Co. v. Stribling, 192 So.2d 409, 418 (Miss.1966)). However, “[t]he [trial] court may not judicially note what is a reasonable fee and it certainly may not merely pull a figure out of thin air. Rather, the party entitled to recover a reasonable fee must furnish an evidentiary predicate therefor.” Key Constructors, Inc. v. H & M Gas Co., 537 So.2d 1318, 1325 (Miss.1989) (citing Sanford v. Jackson Mall Shopping Ctr. Co., 516 So.2d 227, 230 (Miss.1987); Lovett v. E.L. Garner, Inc., 511 So.2d 1346, 1354 (Miss.1987)). Cole man suggests that Waller failed to adduce sufficient evidence during the post-trial hearing on attorneys’ fees and suggests that the trial court simply awarded the amount requested by Waller. The record, however, reveals that, in support of its post-trial motion for attorneys’ fees, Waller produced a detailed, itemized statement of fees incurred from April 2004 through trial in February 2011, accompanied by affidavits from its attorneys. This argument is without merit.

On Cross-Appeal

V. Whether the trial court erred in reducing the punitive damages from $25,000 to $0.
¶ 30. The jury awarded Waller punitive damages in the amount of $25,000, which the trial court decided was reasonable and rationally related to the statutory purpose of such damages. Post-trial, Coleman filed a motion for remittitur seeking a reduction of the punitive damages based on its negative net worth. In support of that motion, Coleman produced a balance sheet, a profit and loss statement, and affidavits from its accountant and its principals. Its accountant, Rob Church, CPA, made a determination of negative net worth. Waller opposed the motion based on its contention that this information should have been disclosed during discovery, or at least prior to trial. See URCCC 4.04(a).
¶ 31. The trial court reduced the punitive damages to $0, based on its finding that Coleman had a negative net worth and that, pursuant to Mississippi Code Section ll-l-65(3)(a)(iv) (Supp.2012), an award of punitive damages that exceeds two percent of the defendant’s net worth for a defendant with a net worth of $50 million or less is prohibited.
¶ 32. Waller argues that Coleman waived the claim for a reduction of punitive damages made in its post-trial motion by not presenting evidence of net worth at trial. See C & C Trucking Co. v. Smith, 612 So.2d 1092, 1105 (Miss.1992) (holding that “evidence of net worth must be presented at trial, or error in the amount of punitive damages is waived.”). Moreover, Waller renews its argument that Coleman’s disclosure of its negative net worth was untimely, and, as a result of Coleman’s alleged untimely disclosure, Waller contends it did not have sufficient time to review the financial statements or to depose Coleman’s post-trial designated financial expert.
¶ 33. The holding of C & C Trucking Co., 612 So.2d at 1105, is as follows:
*320 We hold that it is not legally necessary for either plaintiff or defendant to introduce evidence of the net worth of the defendant during the trial to support an award of punitive damages. If, however, no such evidence is presented, neither party may challenge on appeal either the inadequacy or the excessiveness of a punitive damages award. If a party wishes to preserve the question for appeal, evidence of net worth must be presented at trial, or error in the amount of punitive damages is waived.
Thus, both parties are charged with either presenting evidence of net worth, or waiving their right to challenge the amount of punitive damages. Because Waller failed to adduce proof of Coleman’s net worth during the punitive phase, it cannot now complain of the reduced verdict.[9]

Conclusion

¶ 34. On direct appeal, Coleman’s argument that the contracts were ambiguous is without merit. There is no error on the part of the trial court in finding the contracts irrevocable and nontransferable. Regarding Waller’s claim of tortious interference with contracts, we agree with Coleman that Waller was unable to show it suffered any losses stemming from Coleman’s “transfer” of services for Waller’s customers who are still living. The trial judge ruled that Coleman’s “transfers” were null and void and that Waller still has binding contracts with these policy holders. Accordingly, we remand for a new trial on damages. As for Coleman’s final assignment of error, we find no error on the part of the trial court in awarding Waller’s attorneys’ fees and, thus, affirm.
¶ 35. Regarding the cross-appeal, Waller did not adduce proof at trial that Coleman had a positive net worth and cannot now challenge the insufficiency of the punitive damages award. Thus, we affirm the trial court’s order reducing the award to $0 based on a finding that Coleman had a negative net worth.
¶ 36. ON DIRECT APPEAL: AFFIRMED IN PART, REVERSED IN PART AND REMANDED. ON CROSS-APPEAL: AFFIRMED.
CARLSON AND DICKINSON, P. JJ., RANDOLPH, LAMAR, CHANDLER, PIERCE AND KING, JJ., CONCUR. WALLER, C.J., NOT PARTICIPATING.

. By the time of trial, Waller had abandoned its defamation claim.

. The docket shows that the original complaint was filed October 7, 2004, and suggests that Aubrey Parham was one of the originally *313 named plaintiffs; however, only the First Amended Complaint, which lists the Estate of Aubrey Parham as a named party, and was filed August 12, 2005, is included in the record.

. The plaintiffs filed their response to Waller’s counterclaims on June 3, 2005.

. Coleman maintains that the trial court erroneously relied on precedent from other states that was not binding on Mississippi courts. While the trial court’s order did cite two cases from other states, it is clear that the trial court relied primarily on Mississippi Code Section 75-63-63 (Rev.2009).

.Included in the record are examples of three forms of contracts used by Waller. Only three representative contracts (one for each of the three forms) from three different customers (including that of Parham) are included in the record. Coleman does not take issue with the fact that the record does not contain any of the contracts at issue in Waller’s claim for lost profits arising from Coleman’s alleged tortious interference with those contracts.

. 15 U.S.C.A. § 2 (2009).

. Given its effective date of July 1, 2012, the amendment would not apply to any of previously existing contracts between Waller and its consumers.

. The Secretary of State’s office has jurisdiction over consumer complaints regarding pre-need funeral services under the Mississippi PreNeed Cemetery and Funeral Registration Act, but only with respect to those contracts executed after the effective date of the statute, July 2002. Miss.Code Ann. § 75-63-69 (Rev. 2009).

. Alternatively, Waller maintains that the trial court erred in reducing the punitive damages because the trial court’s finding that Coleman had a negative net worth was not based on generally accepted accounting principles, as required by Mississippi Code Section 11 — 1— 65(3)(b) (Supp.2012), given that Coleman’s expert did not state that his opinion was in accordance with generally accepted accounting principles. As we have found that Waller failed to preserve this issue for appeal, it is unnecessary to address this argument.