# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01252-COA

**KENNETH MOORE AND CAROLYN MOORE**                    **APPELLANTS**

**v.**

**ROY D. MCDONALD, DONNA R. MCDONALD**                    **APPELLEES**
**AND RUTH BELTON**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/20/2015 |
| TRIAL JUDGE: | HON. DAWN H. BEAM |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | JOHN R. REEVES<br>JOHN JUSTIN KING |
| ATTORNEYS FOR APPELLEES: | SAMUEL STEVEN MCHARD<br>MARCUS ALAN MCLELLAND |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| TRIAL COURT DISPOSITION: | ENTERED JUDGMENT FOR APPELLEES AND AWARDED COMPENSATORY DAMAGES OF $13,336.55, PUNITIVE DAMAGES OF $10,000, ATTORNEYS' FEES AND EXPENSES OF $65,177.75, AND EXPERT EXPENSES OF $1,700, AND ENJOINED APPELLANTS FROM TRESPASSING ON APPELLEES' PROPERTY |
| DISPOSITION: | AFFIRMED - 02/07/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WILSON, J., FOR THE COURT:**

¶1.     This appeal involves a long-running boundary dispute between neighbors in Pearl River County.  In 2010, this Court unanimously affirmed the judgment of the chancery court establishing the boundary between the property of Roy and Donna McDonald and Donna's

mother, Ruth Belton (collectively, "the McDonalds"), and the property of Kenneth and Carolyn Moore. *Moore v. McDonald*, 47 So. 3d 1186, 1190 (¶17) (Miss. Ct. App. 2010). The judgment also enjoined the Moores from disturbing the McDonalds' peaceful and quiet enjoyment of their property. In 2013, the Moores willfully violated that injunction by ignoring the boundary established by the judgment; using a tractor and auger to put fenceposts in the McDonalds' driveway, which rendered the driveway impassable and forced the McDonalds to install a new gate to access their land from another road; tearing down the McDonalds' fence; uprooting or cutting down numerous large crepe myrtle trees on the McDonalds' property; littering the McDonalds' property with debris; and threatening, intimidating, and bullying Donna McDonald. The McDonalds filed a petition for contempt and other relief, and the chancellor found that the Moores were in contempt and awarded the McDonalds compensatory damages, attorneys' fees and expenses, and $10,000 in punitive damages.

¶2.     On appeal, the Moores do not dispute any of the chancellor's findings. Nor do they dispute that their conduct was malicious and outrageous such that it was appropriate for the court to assess punitive damages and attorneys' fees. They argue that the chancellor erred by awarding the McDonalds attorneys' fees incurred in connection with the Moores' bankruptcy case and attorneys' fees for the work of more than one lawyer. They also argue that the punitive award exceeds two percent of their net worth, in violation of Mississippi Code Annotated section 11-1-65(3) (Rev. 2014). As we explain below, the chancellor's award of attorneys' fees was proper, and the Moores are not entitled to the benefit of the

2

statutory cap on punitive damages because they waived the issue and failed to present any credible evidence of their net worth. Therefore, we affirm.

¶3. The Moores do not challenge any of the chancellor's factual findings, and their brief includes virtually no discussion of the facts or procedural history of the case; accordingly, we discuss the facts and proceedings below only to the extent necessary to address the Moores' three issues on appeal.

## DISCUSSION

### I. Attorneys' Fees Related to the Moores' Bankruptcy Case

¶4. On May 16, 2014, the McDonalds filed a motion for summary judgment supported by exhibits and affidavits. Eleven days later, the Moores filed for bankruptcy. As a result, all proceedings in the chancery court were stayed and the impending trial was cancelled. Counsel for the McDonalds entered an appearance in the bankruptcy case and filed an adversary complaint to preserve the McDonalds' claim against the Moores. *See* 11 U.S.C. § 523(a)(6) (2012) (providing that a debt for "willful and malicious injury" to the person or property of another is not dischargeable in bankruptcy). The McDonalds' counsel also attended the meeting of creditors and filed a motion for sanctions based on the Moores' alleged misrepresentations in the bankruptcy case. In response to hearing notices in the McDonalds' adversary proceeding, the Moores appeared before the bankruptcy court and asked that their bankruptcy petition be dismissed. The court granted their request, which permitted the chancery case to proceed.

¶5. The chancellor found "that the Moores intentionally stalled [the chancery] action by

3

filing [a petition for] bankruptcy which was dismissed after considerable time and effort by [counsel for the McDonalds]." The chancellor therefore found that "attorney time and expenses expended . . . in the Moore bankruptcy case were properly incurred on behalf of the McDonalds and should be awarded as part of the fees and costs awarded in this case." On appeal, the Moores do not challenge the chancellor's factual basis for awarding attorneys' fees incurred in connection with the bankruptcy case. The Moores' only argument is that "[t]he Pearl River County Chancery Court was not the appropriate forum to request attorneys' fees for work related to the bankruptcy." They argue that approximately $3,975 in fees that the McDonalds incurred related to the bankruptcy proceeding could only be recovered in the bankruptcy court.

¶6. The Moores' argument is without merit. The Moores do not dispute that the McDonalds were entitled to an award of attorneys' fees, and they cite no authority for their argument that such fees are not recoverable simply because they were incurred in a related bankruptcy proceeding. Although not directly on point, our Supreme Court recently held that a state court can award fees incurred in federal court in connection with a motion to remand the case to state court. *See O.D. v. Dillard*, 177 So. 3d 175, 189 (¶44) (Miss. 2015). In addition, other courts have held that a state court may award attorneys' fees incurred in connection with a related bankruptcy proceeding. *See Chinese Yellow Pages Co. v. Chinese Overseas Mktg. Serv. Corp.*, 170 Cal. App. 4th 868, 882 (Cal. Ct. App. 2009); *Gill Sav. Ass'n v. Chair King Inc.*, 797 S.W.2d 31, 32 (Tex. 1990). Accordingly, we hold that the chancellor did not err by awarding attorneys' fees related to the bankruptcy case.

4

## II. Attorneys' Fees for Multiple Attorneys

¶7. The Moores next assert that the chancellor "erred by assessing attorneys' fees . . . that cover the costs of more than one attorney." The Moores argue that Mississippi Supreme Court precedent "clearly sets forth that . . . only a sufficient fee to secure one competent attorney may be granted." In fact, however, our Supreme Court has rejected this very argument. *Coleman & Coleman Enters. Inc. v. Waller Funeral Home*, 106 So. 3d 309, 318 (¶27) (Miss. 2012) ("We do not interpret [*McKee v. McKee*, 418 So. 2d 764 (Miss. 1982),] as having held that attorneys' fees in Mississippi are limited to the fees of only one lawyer."); *see also Upchurch Plumbing Inc. v. Greenwood Utils. Comm'n*, 964 So. 2d 1100, 1116 (¶40) (Miss. 2007) (affirming an award of attorneys' fees for the work of two attorneys); *Mabus v. Mabus*, 910 So. 2d 486, 490 (¶13) (Miss. 2005) (same). The Moores do not identify any duplicative time entries or excessive charges. They make only a broad argument that fees for the work of more than one attorney are not recoverable. This argument is contrary to Supreme Court precedent and thus without merit.

## III. Punitive Damages

¶8. The Moores do not dispute that their conduct was malicious such that an award of punitive damages was appropriate. Miss. Code Ann. § 11-1-65(1)(a). Their only objection is that the punitive award exceeds two percent of their net worth in violation of Mississippi Code Annotated section 11-1-65(3). *See id.* § 11-1-65(3)(a)(vi) ("[N]o award of punitive damages shall exceed . . . [t]wo percent (2%) of the defendant's net worth for a defendant with a net worth of Fifty Million Dollars ($50,000,000.00) or less."). On appeal, they argue

that the chancellor was required to accept at face value their own representations of their net worth and cap punitive damages at $1,268. However, in the court below, the Moores failed to raise the issue of the statutory cap on punitive damages. The Moores also failed to introduce any reliable evidence of their net worth. Accordingly, they were not entitled to the benefit of the statutory cap on punitive damages.

¶9. On March 20, 2015, at the conclusion of the hearing on the McDonalds' contempt petition, the chancellor found that an award of $10,000 in punitive damages would be appropriate. After that hearing, the Moores, who had been proceeding pro se, decided to hire a lawyer. At a hearing on May 8, 2015, the Moores' recently retained counsel argued that the burden was on the McDonalds to prove the Moores' net worth before the court could award *any* amount of punitive damages. Indeed, counsel asserted that "[t]he case law is clear" on this point. At the Moores' request, the chancellor then continued the case to July 7, 2015, for a hearing on attorneys' fees and the Moores' net worth for purposes of assessing punitive damages.

¶10. At the July 7 hearing, counsel for the Moores acknowledged that his argument at the prior hearing was mistaken and that proof of net worth is *not* necessary to support an award of punitive damages. Counsel then argued that either side could offer such evidence, which the court should then consider in assessing punitive damages. However, in all of the proceedings in the chancery court, the Moores *never*—at any hearing or in any pleading—mentioned the statutory cap on punitive damages or argued that punitive damages must be capped at two percent of their net worth or any other number. "It is a long-

6

established rule in this state that a question not raised in the trial court will not be considered on appeal." *Adams v. Bd. of Sup'rs of Union Cty.*, 177 Miss. 403, 170 So. 684, 685 (1936). "Moreover, it is not sufficient to simply mention or discuss an issue at a hearing. The rule is that a 'trial judge cannot be put in error on a matter which was never *presented to him for decision.*'" *City of Hattiesburg v. Precision Constr. LLC*, 192 So. 3d 1089, 1093 (¶18) (Miss. Ct. App. 2016) (quoting *Methodist Hosps. of Memphis v. Guardianship of Marsh*, 518 So. 2d 1227, 1228 (Miss. 1988)). Accordingly, the Moores waived any argument that the chancellor should have applied the statutory cap.

¶11.    Procedural bar notwithstanding, the Moores also failed to present evidence sufficient to require the chancellor to apply the cap. The only evidence that the Moores introduced of their net worth was a Uniform Chancery Court Rule 8.05 financial statement that they apparently signed on the morning of the hearing. The Moores' 8.05 statement estimated the value of their home and land as $85,000 with a $22,000 mortgage balance; claimed household goods, furniture, and clothing worth $400; disclosed checking accounts with a combined balance of $325 or less; and listed two vehicles—one worth $5,600 or less with a $5,600 loan, and the other worth $1,500 with an $1,800 loan. The Moores gave a total value of their assets of $0, although the assets listed totaled $63,425.

¶12.    The Moores claimed that their 8.05 statement was accurate; however, in response to questions by the chancellor, Carolyn Moore admitted that the statement failed to account for the proceeds of the $22,000 mortgage loan, which they had only recently obtained following the hearing on the McDonalds' contempt petition. Carolyn Moore testified that they had paid

7

their new attorney $5,000 and had budgeted the remaining $17,000 for attorneys' fees for post-trial motions and appeal. On cross-examination, she testified as follows:

Q. Where is the money, Ms. Moore?

A. Well, I've got the money. Don't worry about that.

    THE COURT: Well, you do have to tell -- I'm worried about that. Where is the $17,000?

    MS. MOORE: My daughter has got it if you want to know the truth about it.

Q. Do you not have any control about how that money is spent?

A. Well, it's not spent yet so --

Q. Okay. But you didn't list that on your 8.05, did you?

A. No, I did not list it.

Q. So, in fact, it's not correct that this financial declaration reflects everything that you have got?

A. Well I guess not.

¶13. In addition, the transcript of the meeting of creditors in the Moores' bankruptcy case indicates that the Moores failed to make a full and complete disclosure of their assets in their bankruptcy filings and may have understated the value of their property or other assets. When questioned about omissions from their bankruptcy filings, Kenneth Moore repeatedly refused to answer or claimed that he had forgotten. The Moores did not introduce their tax returns or the loan application that they had submitted to the Bank of Wiggins only weeks earlier. Instead, they relied solely on their admittedly inaccurate 8.05 statement.

¶14. Having heard the Moores' testimony regarding their net worth, the chancellor made

8

the following findings and observations:

> The Court has reviewed the financial statement of the Moores, . . . [a]nd finds that it is by their own admission inaccurate. $17,000 that was borrowed and placed with their daughter is not included on the financial statement, and that really puts the whole financial statement into question, in addition to the whole line of questioning . . . of Mr. Moore and his dishonesty with the Bankruptcy Court.

> The Court has no idea what the value of their property is. I don't believe that the value is what they say it is. I don't believe them period. I wish the Appellate Court -- because I'm confident that this will be appealed -- could sit in this chair and see the snickering periodically of the Moores, both. I remember making a note of that in the initial trial, as well as I have just noted for myself smug looks or at one point, I saw them -- Mr. and Ms. Moore -- laughing between the two of them while the Court was going on.

After noting some additional questions regarding claims in the Moores' 8.05 statement, the chancellor concluded that the Moores' evidence of their net worth was "not sufficient for the Court to disturb its order that the Moores should pay $10,000 in punitive damages."

¶15.    The chancellor did not err by reaffirming her $10,000 punitive award. "[P]roof of net worth is not required to award punitive damages. . . . [F]or a defendant to mitigate potential punitive damages, it is his responsibility to present proof of his net worth and financial condition." *Woodkrest Custom Homes Inc. v. Cooper*, 108 So. 3d 460, 469 (¶¶41-42) (Miss. Ct. App. 2013) (citing *C&C Trucking Co. v. Smith*, 612 So. 2d 1092, 1102, 1105 (Miss. 1992)); *accord Coleman & Coleman Enters.*, 106 So. 3d at 320 (¶33). Furthermore, the "evidence must be sufficient to enable the trial court to determine the defendant's current net worth, according to generally accepted accounting principles." *In re Miss. Medicaid Pharm. Average Wholesale Price Litig. ("AWP Litig.")*, 190 So. 3d 829, 846 (¶40) (Miss. 2015) (opinion of Chandler, J., joined by Kitchens and King, JJ., affirming). The Moores failed to

meet their burden. They presented only one self-serving and admittedly inaccurate document of their own creation. Clearly, they did *not* present "evidence . . . sufficient to enable the [chancellor] to determine [their] current net worth, according to generally accepted accounting principles." *Id.*

¶16. A trial judge is not required to apply the punitive damages cap when, as in this case, the defendant presents absolutely no credible evidence to support its application. Again, the Supreme Court has made clear that proof of the defendant's net worth "is not legally necessary . . . to support an award of punitive damages." *Coleman & Coleman Enters.*, 106 So. 3d at 320 (¶33) (quoting *C&C Trucking*, 612 So. 2d at 1105). So if a defendant relies on the cap, it must present "evidence . . . sufficient to enable the trial court to determine [its] current net worth, according to generally accepted accounting principles." *AWP Litig.*, 190 So. 3d at 846 (¶40). The Moores failed to provide evidence sufficient to enable the trial court to make such a determination. Given the Moores' failure of proof, the chancellor was not required to apply the statutory formula based on speculation or guesswork.

¶17. In summary, the Moores waived appellate review of their argument regarding the statutory cap on punitive damages. In addition, the Moores provided no reliable basis for the chancellor to apply the statutory cap. Therefore, we affirm the chancellor's award of $10,000 in punitive damages.

**CONCLUSION**

¶18. For the foregoing reasons, the chancery court did not err by awarding attorneys' fees incurred in connection with the Moores' bankruptcy proceeding, fees for the services of more

than one attorney, or $10,000 in punitive damages.  Accordingly, we affirm.

¶19.    **THE JUDGMENT OF THE PEARL RIVER COUNTY CHANCERY COURT IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, FAIR AND WESTBROOKS, JJ., CONCUR.  IRVING, P.J., AND GREENLEE, J., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION.  CARLTON, J., NOT PARTICIPATING.**